### Goff v. Saxon.

(Decided February 27, 1917.)

Appeal from Fayette Circuit Court.

Contracts—Unilateral Contract—Not Enforcible.—A contract that obligates one of the parties to do several things but does not bind the other to do anything, is a unilateral contract and not enforcible by either party.

ALLEN & DUNCAN for appellant.

HUNT & BUSH and J. T. FARMER for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellant as plaintiff to enjoin the appellee as defendant from teaching elocution or dramatic art in any of its branches in Lexington or within twenty-three miles thereof, or in the cities of Frankfort or Danville, within a period of five years from and after June, 1915. The lower court sustained a general demurrer to the petition and amended petition and the plaintiff appeals.

The cause of action of the plaintiff was rested on an alleged violation of clause four of a contract between the parties, reading as follows:

"This agreement, made and entered into this July 26th, 1913, by and between Edward Saxon, of Nashville, Tennessee, party of the first part, and Anna Chandler Goff, of the Arts Club, Lexington, Kentucky, party of the second part.

"Witnesseth, that whereas party of the second part is desirous of securing the services of said party of the first part, as teacher of expression and dramatic art, all of which is to be done under the general direction of said party of the second part.

"Now, therefore, said party of the first part in consideration of the promises and agreements of said party of the second part herein contained hereby promises and agrees:

"First, to be in Lexington, Kentucky, on or before the fifteenth of September, 1913, and to teach, instruct and direct such pupils and clubs as may be assigned him by party of the second part, for instruction in any branch called dramatic art as taught and directed by party of the first part. Party of the first part agrees to avail himself of every opportunity to secure pupils, private or in classes, in Lexington or in adjacent towns, and to organize dramatic clubs where it seems advisable.

"Said party of the first part hereby agrees not to engage in the work of teaching or directing during the time of this contract, except under the direction of said party of the second part, as herein agreed upon.

"Second. Said party of the first part hereby agrees that the term of this contract shall be for a period of ten (10) school months, of four weeks each, from September 1, 1913, to June 6, 1914.

"Third. Said party of the first part agrees to do all such teaching as may be assigned him by the party of the second part in Lexington, Ky., or in any adjacent towns, within a radius of twenty-three miles, and in Frankfort or in Danville.

"Fourth. Said party of the first part hereby agrees not to engage in the city of Lexington, Ky. (nor within twenty-three (23) miles thereof, or in Frankfort or in Danville) in the business of teaching or directing in elocution or dramatic art in any of its branches for a period of five years after the termination of this contract, or any contract between the parties named.

"Fifth. To pay said party of the second part fifteen dollars and fifty cents ($15.50) per month for the rent of studio at the Arts Club, beginning September 15, 1913, and continuing to the end of the contract between the parties herein named.

"In consideration whereof said party of the second part promises and agrees:

"First. To give her influence and the influence of the Arts Club to the party of the first part for the first ten months covered by this contract without any commission.

"Second. To furnish registrar that will attend to all business connected with said department.

"Third. That after the expiration of this contract for ten months a second contract will be entered upon as follows for the school year beginning September 1, 1914:

"The party of the first part will receive three-fourths (¾) of the gross receipts, and the party of the second part will receive the remaining one-fourth (¼) of the gross receipts, from all teaching and directing of said party of the first part either in Lexington or in adjacent towns as covered by the first part of this lease. With the exception of this charge concerning commission to party of the second part, the remainder of the contract will remain absolutely the same for the school year beginning September, 1914, and until the termination of the final contract.

"Fourth. To furnish a registrar that will attend to all business connected with said department."

We are advised by the briefs of counsel that the lower court was influenced to sustain the demurrer to the petitions of the plaintiff upon the ground that the contract was so lacking in mutuality as to be uninforcible by either party, and upon the further ground that it was so unjust and unequal in its effect upon the defendant that a court of equity would not specifically enforce it.

The construction of this contract is, of course, a matter for the court, and to the contract alone we must look in determining the rights of the parties. The contract may be divided into two parts, as the first five clauses set out the promises and agreements of Saxon, and the remaining four stipulations set out the promises and agreements of Miss Goff. It will be seen that Saxon agreed in the first clause to teach, instruct and direct such pupils and clubs as might be assigned to him by Miss Goff for instruction in such branches of dramatic art as were taught by her, and to secure pupils and organize clubs. And he further promised not to engage

in the work of teaching except under the direction of Miss Goff.

It is very plain that under this clause there was no obligation on the part of Miss Goff to do anything, and neither could Saxon do anything unless by her permission. In other words, Saxon was to do whatever she saw proper to direct or permit him to do, and no more, except that he was to secure as many pupils and classes as he could from which service he could receive no benefit or compensation unless Miss Goff saw proper to assign him for instruction such pupils or classes. Whether she did this or not was entirely optional with her.

The second clause merely fixed the duration of the contract.

The conditions of the third clause are really embodied in the first clause, as in this clause Saxon merely agreed to do such teaching as Miss Goff permitted or assigned him to do. Whether she assigned him any teaching or permitted him to do any teaching, was entirely optional with her.

In the fourth clause Saxon agreed not to teach within a certain territory until after five years from the termination of the contract.

In the fifth clause he agreed to pay Miss Goff $15.50 a month as rent for a studio, but unless Miss Goff saw proper to permit him to teach or assigned him pupils or classes to instruct, it is plain that Saxon would get no benefit whatever from the use of the studio for which he was to pay the stipulated rent.

In other words, the sum and substance of the five clauses of the contract setting out what Saxon should do imposed on him several obligations, but none on Miss Goff. He must do what she assigned or permitted him to do and she need not permit him to do anything or assign him anything to do.

Let us see now what beneficial obligations to Saxon Miss Goff assumed the performance of under the last four clauses purporting to set out her agreements under the contract. In the first one she agreed to give her influence and the influence of the Arts Club to Saxon, but just how this influence would be helpful to Saxon is not apparent when it is kept in mind that he could not engage in any remunerative work unless she permitted him to do so or assigned him work to do. The mere fact

that one party agrees to use his influence for the benefit of another cannot be of any help to the other when no returns from the influence can be received by him unless the party promising the influence consents that the other party may derive benefit from it. When it is kept in mind that Saxon could not earn any money by either teaching or directing until and unless Miss Goff permitted him to do so or assigned him pupils or classes to teach or instruct, it is obvious that whether any beneficial results came to Saxon from this promised influence was entirely in the discretion of Miss Goff. She could, if she desired to, make her influence remunerative to him, and she could, if she wanted to, deny him the right to receive any benefits from it.

In the second and fourth clauses Miss Goff agreed to furnish a registrar to attend to all the business. It might be asked, what business? And the only answer would be, such business as she saw proper to permit Saxon to engage in. Of course the promise on the part of one party to furnish a registrar for the benefit of another party might be of value to the other party if he was permitted to acquire or create business from which he would derive a profit. But, on the other hand, if he was not permitted to engage in any profitable enterprise except by the consent of the party agreeing to furnish the registrar, this promise might be of no value whatever. It would hardly be worth while to agree to furnish a man a clerk to attend to his business and in the same breath tell him "you can't attend to any business unless I permit you to do it."

The third clause, after providing for a renewal of the contract, stipulated that Saxon should receive three-fourths of the gross receipts from all teaching and directing engaged in by him. But it does not stop there. It limits the teaching and directing from which he is to get these receipts to such teaching and directing as Miss Goff assigned him to do, because it stipulates that these receipts are to be derived from "all teaching and directing of said party of the first part, either in Lexington or adjacent towns, as covered by the first part of this lease." It is, therefore, plain that Saxon could not receive any receipts from teaching or directing unless Miss Goff assigned him the teaching or directing to do. And so whether Saxon received any receipts depended altogether on Miss Goff, as Saxon himself could

not, in opposition to her wishes, engage in any teaching or directing that would bring him receipts.

Under this contract, reading it as a whole, Saxon agreed to do several things, but Miss Goff did not agree to do anything. It is a fine example of what is termed a unilateral contract, binding in its terms upon one party, but not upon the other. Such a contract is not enforcible by either party. Rehm-Zeiher Co. v. Walker Co., 156 Ky. 6; Killebrew v. Murray, 151 Ky. 345; Berry v. Frisbie, 120 Ky. 337.

The judgment is affirmed.