## Harrod v. Armstrong, et al.

(Decided October 23, 1917.)

### Appeal from Franklin Circuit Court.

1. Ejectment—Verdict Need Not Describe Land.—A verdict of the jury in ejectment suits need not in itself describe the land involved, and if it is sufficient for the court to determine the real intention of the jury a judgment describing the land may be pronounced upon it and the judgment will be sufficient, although it might not identify the land, if such identification can be found in the records of the suit.

2. Boundaries—Report of Processioners.—The report of processioners made at the instance of a landowner under the provisions of section 2368 of the Kentucky Statutes after notice given to the adjoining owner, and the report filed as provided by section 2374 of the Kentucky Statutes, is prima facie evidence of the true location of the line, as well as natural objects forming corners, &c., but such report is not evidence of extrinsic matters not coming within the duties of the processioners, such as agreements between the parties as to the true location of the dividing lines, and it is erroneous to admit before the jury statements in the report containing such extrinsic matters.

3. Evidence—Report of Processioners.—Objections to incompetent testimony must specifically point it out, and a general objection to evidence in its entirety, as to an entire deposition, or an entire writing, will not avail as to incompetent portions of the evidence, unless such incompetent portions are specifically objected to; and where a report of processioners contained both competent and incompetent matter, a general objection to the entire report is not sufficient to raise the error in the admission of the incompetent parts.

SCOTT & HAMILTON for appellant.

PAUL C. GAINES and JAMES H. POLSGROVE for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellees, plaintiffs below, own a tract of land situated in Franklin county, Kentucky, adjoining and just north of one owned by appellant (defendant). Shaw's branch, the general direction of which is east and west, practically forms the line between the two farms, but defendant contends that the natural objects and the courses and distances called for in his title papers, and perhaps those of plaintiffs, locate the line at the mouth of Shaw's branch where it empties into Marshall's branch, which is the western line of the two farms, just south

of Shaw's branch. Further along, running eastwardly, the line crosses Shaw's branch and is located north of it, according to defendant's contention, but plaintiffs contend that the true line is south of Shaw's branch along the eastern part of the dividing line, but, if not, that they and those under whom they claim have been in the adverse possession to the line for which they contend on the south side of the branch for more than fifteen years, claiming the land to such line throughout that time, and that if their deeds do not convey to them the land up to the line south of the branch that they have acquired title by adverse possession.

Something near twenty years before this trouble arose a fence was constructed south of the branch along the line claimed by plaintiffs, and in 1915 the defendant attempted to remove that fence and to reconstruct it upon the line for which he contends running north of the branch. To enjoin him from so doing this suit was filed and a temporary restraining order was obtained, but before it could be served the fence was removed and the petition was amended so as to convert the suit into an ordinary one in ejectment to recover the small strip of land lying between the old fence line and the one where defendant removed it, being about thirty-two feet wide at one end and running about sixteen hundred feet to a point.

A denial, with an affirmative plea claiming to own the land in controversy himself, completed the answer, which, with a reply denying defendant's ownership, made up the issues, and upon trial a verdict was returned for the plaintiffs upon which judgment was rendered, to reverse which this appeal is prosecuted.

The grounds for a reversal urged before us are (1) that the court erred in transferring the case to the ordinary docket and trying it as an ordinary action; (2) that the verdict is insufficient and so indefinite that a judgment cannot be based upon it; (3) error of the court in overruling defendant's motion for a peremptory instruction; and (4) error in the admission of incompetent testimony.

Section 12 of the Civil Code of Practice permits either party upon motion to have an equitable action properly commenced as such transferred to the ordinary docket for the trial of any issue concerning which he is entitled to a jury trial, and section 10 provides for the transfer of an action from the equity to the ordinary

docket, or *vice versa,* when under the pleadings the form of the action is changed and the parties are entitled to such transfer. Under these provisions it has been the uniform practice upheld by this court in numerous opinions to make such transfers from one docket to the other whenever the pleadings changed the form of the action. In this case the suit in equity for an injunction as first filed was abandoned by the amended petition and the action converted into an ordinary suit in ejectment. Under these circumstances the court was not only authorized to transfer the cause to the ordinary docket, but it was his duty to do so, and the objections to the court's action in this matter are not well taken.

Briefly considering the (2) objection, we find that the jury returned this verdict: ''We, the undersigned members of the jury in the case of Florence Armstrong v. Forrest Harrod, find for the plaintiff, awarding the strip of ground in dispute located between the old and new fence lines to the plaintiff, with direction that the fence lines be put back where it was prior to June 8th, 1915. We also direct that the defendant be permitted to move the fence built by him on June 8th, 1915.''

We cannot agree with defendant's counsel that this verdict is indefinite. It expressly finds whom the jury considers under the evidence to be the owner of the strip of land in controversy, which, according to the pleadings, is the same strip of land hereinbefore indicated, and which the court incorporated into its judgment. Besides, if the verdict had been insufficient because of indefiniteness, in order for the complaining party to take advantage of the defect upon appeal he should have objected to the judgment at the time and asked that it be corrected so as to cure the defect and to conform to the jury's finding of fact. The same objection was made to the verdict in the case of Walter v. Louisville Railway Company, 150 Ky. 652, but this court found that the verdict in that case was sufficient to authorize the judgment rendered upon it, saying, however:

''Moreover, appellant did not object to the form of the verdict at the time it was rendered, but treated it as sufficient for the purposes of the case, and permitted the jury to be discharged without objection. If appellant had desired to raise the question of the sufficiency of the form of the verdict, he should have done so at the time it was returned, in order that the court might, as would

have been its duty, have directed the jury to correct the form of its verdict so as to conform to the law.''

The same rule of practice is upheld in the cases of Williams v. Comth., 140 Ky. 35, and Gillum v. Comth., 121 S. W. 445.

We do not find it necessary that verdicts in this character of proceedings should describe the land so that it may be identified by what is contained in the verdict. Indeed, it has been held that in cases of ejectment a finding by the jury in its verdict only for the one or the other of the parties litigant will be sufficient to authorize a judgment to be pronounced adjudging the land to belong to the one in whose favor the verdict was rendered. Latham v. Lindsey, 130 Ky. 669; Jackson v. Hill, 22 Ky. L. R. 563. We are therefore unable to sustain this objection urged against the judgment.

The (3) error complained of is equally untenable because the plaintiffs' testimony by a number of witnesses was to the effect that they and those through whom they claim asserted and held open and notorious possession up to the line of the old fence south of Shaw's branch for a period of as much as, if not more than, twenty years before defendant moved the fence. It is true that this theory was combatted by a respectable modicum of testimony introduced by the defendant, but plaintiffs' testimony upon this point was amply sufficient not only to create a contradiction in the testimony, thereby raising an issue for the determination of the jury, but sufficient to sustain the verdict based upon it. Clearly, then, the motion for a peremptory instruction should not have been sustained.

The incompetent testimony complained of under objection (4) consists in (a) the admission of the report made by processioners appointed at the instance of the defendant upon notice to the plaintiffs under the provisions of section 2368 of the Kentucky Statutes, and which report was made and filed as required by section 2374 of the statutes; and (b) the introduction of a map made by a witness by the name of Hollingsworth.

The dispute over the true location of the line between plaintiffs and defendant became acute some time in the spring of 1915, after which the defendant gave notice to the plaintiffs, and at his instance and under the authority given by section 2368, *supra,* the processioners went upon the premises and endeavored to locate the old line, including the natural objects forming corners as

contained in the defendant's title papers. They did this, and performed their duty under the law, and made a report to the county court as is required by section 2374 of the statutes, which report located the line practically if not entirely as the defendant contends. Under the provisions of the latter section of the statute such report "shall be *prima facie* evidence against and between the parties interested and others claiming through or under them." So much of the report, therefore, as was confined to the duties required of the processioners as outlined in section 2368, which are the remarking of the old lines and the location of and remarking the old corners, was *prima facie* evidence as to the true location of the line. But the report is neither *prima facie* nor any evidence of facts which it is not made the duty of the processioners to determine and to report. It is virtually so held in the case of Crouch v. Wainscott, 122 Ky. 107, wherein it is said:

"The report of the processioners is evidence, *prima facie*, of the fact that the corners and lines therein established are in the same places fixed in an original document or proceeding. Whether the party then owns the land embraced by such lines is to be determined upon the whole case by the court or jury trying the fact. The superiority of such title is not affected, and is neither enhanced nor diminished by such report."

The report in the instant case went further than the statute authorized, and beyond the authority of the processioners. After describing the line, which it found to be the original one from the title papers, it adds: "We find from all the evidence that this original line between the lands of Mrs. Armstrong and Forrest Harrod as above described, was, by agreement, changed to run where the fence now runs on the south bank of said Shaw's branch."

The processioners are nowhere vested with authority to constitute themselves into a court and try the rights of the parties concerning division lines, and the quoted statement is the finding of a fact totally outside of the processioners' duties. They are not authorized to decide who owns the land on either side of the line which they are called upon to establish, but, as stated, their duties are confined only to the true location of the line. It is therefore patent that it was prejudicial error to permit the statement quoted from the report of the processioners to be introduced before the jury. It was no more com-

petent under the circumstances than if it had been written by any other third party and was clearly hearsay testimony. But, however, prejudicial it may have been, we cannot, because of the condition of the record, reverse the judgment therefor.

When the report was offered the defendant objected to it as an entirety, which objections were overruled, and the defendant excepted. Afterwards "the defendant moved the court to withdraw from the consideration of the jury the report of the processioners offered in evidence herewith, and said objections being overruled, the defendant excepts." The uniform and unvarying rule as announced and adhered to by this court is that for an objection to be available it must be specifically directed to that portion of the testimony which is incompetent, and that to object to evidence as a whole when there is contained in it both competent and incompetent testimony will not be sufficient to authorize this court to reverse the judgment because of the error complained of. L. & N. R. R. Co. v. Graves, 78 Ky. 74; L. & N. R. R. Co. v. Montgomery, 17 Ky. Law Rep. 807; Bronston v. Bronston, 141 Ky. 639; and Louisville & Cincinnati Packet Co. v. Bottorff, 25 Ky. Law Rep. 1324. Under the rule so thoroughly settled by these cases, and from which we are not at liberty to depart, we cannot consider the error in admitting the unauthorized statement contained in the processioners' report, however erroneous we may conclude it to have been.

We find no merit in the objection as to the introduction of the Hollingsworth map. All that the witness endeavored to show by the map, and in fact all that it did show, was the true location of the old fence and the new one. Neither the draughtsman nor the map attempted to locate the true line, nor were they introduced for that purpose. The only office of that testimony was to show the location of the lines as contended by each party. Under these circumstances, it was clearly admissible for the purposes for which it was introduced.

Upon the whole case we find no error authorizing a reversal of the judgment, and it is affirmed.