## Louisville Tobacco Warehouse Company v. Zeigler.

(Decided November 10, 1922.)

### Appeal from Barren Circuit Court.

1.  Contracts—Unilateral Executory Contract.—For an executory contract to be enforcible it must be mutually binding upon both parties thereto, and within this principle a unilateral executory contract will not support a cause of action by either party for a breach of its unexecuted terms.

2.  Contracts—Unilateral Contracts—Services in Purchase of Commodity.—A purported contract employing one to render services in the purchase of a commodity, the compensation being a commission based on the quantity purchased, and further providing that the employer should have the right to control the price to be paid as well as the size or amount of the purchase, is unilateral in the sense that it reserves the right to the employer to terminate the contract at any time by exercising his reserved right to permanently fix the amount of the purchase; and this, too, notwithstanding the contract extended for a designated period, and also contained a sufficient consideration flowing from the employe.

3.  Contracts—Services in Purchase of Commodity.—The right to control the matters reserved to the employer, in such cases, is not exhausted by the first or any subsequent designation, since it continues throughout the period in which the parties are engaged in the execution of the contract.

4.  Contracts—Breach of Contract—Damages.—Defendant and plaintiff executed a writing by which the former employed the latter for a period of seven months to purchase tobacco at a designated place and for the services rendered by plaintiff defendant agreed to pay him $1.25 per hundred pounds, but it was further stipulated that defendant should have the right to control the price to be paid as well as the quantity to be purchased. After the purchase of 124,296 pounds defendant notified plaintiff to purchase no more tobacco under the contract, which was tantamount to limiting the purchase to that number of pounds, and in a suit to recover damages for a breach of the contract it is held that no recovery can be had, since defendant did not exceed its rights under the authority reserved in the contract.

HUMPHREY, CRAWFORD & MIDDLETON, W. L. PORTER and C. H. HATCHETT for appellant.

BASIL RICHARDSON, J. LEWIS WILLIAMS, W. H. BAIRD, ED. C. O'REAR and W. G. DEARING for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On October 17, 1917, appellant, Louisville Tobacco Warehouse Company, who was defendant below, and ap-

pellee, C. E. Zeigler, who was plaintiff below, signed a writing which it is claimed in the petition constituted a contract whereby defendant employed the services of plaintiff for a period of seven months ending May 17, 1918, to purchase and prize tobacco for it at Glasgow, Kentucky, and for which defendant was to pay plaintiff the sum of one dollar and twenty-five cents per hundred pounds, plaintiff to do the buying and pay barn rent and defray all the expenses incident thereto, including hogsheads, prizing and handling, and to keep the tobacco insured.    It was furthermore stipulated in the writing that the hogsheads should not exceed in weight between eleven hundred and twelve hundred pounds and that plaintiff would buy no tobacco on the auction market nor any for himself during the seven months covered by the writing.    Other subsidiary stipulations appear therein, but which under our view of the case are immaterial and therefore unnecessary to refer to.    The writing, after stating the time for which it was to continue, says, "and the terms of the agreement are as follows:

"C. E. Zeigler agrees to give as much of his time as may be necessary to buying and handling the purchase of tobacco, and agrees to be controlled by the Louisville Tobacco Warehouse Company in regard to the kind of tobacco to be purchased and *the price to be paid* for same, also the time said tobacco is to be shipped, and the place to which it is to be shipped, also in regard to the *size of the purchase,* and in regard to its sale as to time and price."    (Our italics, here and hereafter.)

There is no reference whatever in the writing to any fixed price to be paid for the tobacco which plaintiff was to purchase under his employment, nor as to the amount thereof, but on the same day defendant wrote plaintiff a letter stating that "In regard to the contract of the Louisville Tobacco Warehouse Company, made of this date, will say, go ahead and buy for us all the burley tobacco you can get at an average not to exceed $20.00.    Please adhere to this average until you are further notified by us."    For the purposes of this opinion we will treat the letter as constituting a part of the agreement.

The plaintiff returned to Glasgow and began efforts to purchase tobacco at the price stated in the letter, but without success, and on October 24, 1917, he wrote plaintiff a letter to that effect in which he stated in substance that he would continue his efforts but expressed

doubts as to his ability to make any purchases. On the night of that day he telephoned defendant and in that conversation he claims that he was authorized to increase the price to twenty-three cents, but on the next day (October 25) defendant wrote him a letter in which it said: "We now authorize you to increase the price you are paying for Burley tobacco not to exceed an average of $22.50 per hundred pounds. We want you to avoid buying any real common, frost bitten or green and dirty crops. At this price we will *expect* you to buy at least one million pounds." After that and up to November 14, 1917, plaintiff purchased 124,296 pounds, and on the last date referred to defendant wrote him saying: "We have decided to discontinue buying tobacco after this date and will therefore ask you not to make any more purchases of tobacco for our account." In due time this action was filed to recover of defendant the sum of $6,000.00 as alleged damages for violating the contract.

The American Tobacco Company was also joined as a defendant and it was alleged in the petition that the contract sued on was entered into by the Louisville Tobacco Warehouse Company for and on behalf of the American Tobacco Company, and that the two had entered into similar contracts with independent buyers on the various tobacco markets throughout the state, the purpose of which, as alleged, was to destroy competition in the purchasing and handling of the quality of tobacco involved, and that under section 8 of chapter 17 of the acts of 1916, for the prevention of pools, trusts, conspiracies and combinations in restraint of trade, plaintiff was entitled to recover treble damages and a judgment against each defendant for the sum of $18,000.00 was asked.

Appropriate pleadings made the issues and upon trial a peremptory instruction was given directing the jury to return a verdict in favor of the American Tobacco Company, but a similar motion made by defendant, Louisville Tobacco Warehouse Company, was overruled, and under instructions submitting its liability a verdict was returned in favor of plaintiff for the sum of $5,000.00, upon which judgment was rendered, and its motion for a new trial having been overruled, it prosecutes this appeal. No steps have been taken by plaintiff to bring to this court for review the propriety of the peremptory instruction in favor of the American Tobacco Company, and that judgment will not be hereafter referred to.

A number of grounds are relied on in the motion for a new trial filed in behalf of defendant, the Louisville Tobacco Warehouse Company, and argued on this appeal as constituting errors authorizing a reversal of the judgment, chief among which is the refusal of the court to sustain the motion for a peremptory instruction in its favor, and since we have concluded that this ground is well taken we will confine our discussion exclusively to it.

The basis of the motion for a directed verdict in favor of defendant is that the quoted portion of the written employment expressly confers on defendant the right to control "the price to be paid for same (the tobacco), also the time said tobacco is to be shipped, and the place to which it is to be shipped, also in regard to the *size of the purchase,*" which, in the absence of any stipulated price or amount of tobacco to be purchased thereunder, it is claimed by counsel for defendant, destroys the mutuality of the writing as a contract and renders it *unilateral,* and, therefore, unenforcible as to all of its unexecuted portions. The contrary is insisted upon by learned counsel for plaintiff, and they further claim that if they should be mistaken as to the interpretation of the original writing, then the letter of the same date supplied the price to be paid for the tobacco, and that the letter of plaintiff dated October 25, 1917, permanently fixed the amount to be purchased at one million pounds, and it was upon that amount that the damages sought to be recovered were estimated. Defendant's counsel admits that the letter of the same date as the original writing may be accepted as a designation of the price to be paid for the tobacco until otherwise altered, but it denies that the one dated October 25, designated the amount of the tobacco to be purchased, but if mistaken in that, then that amount, as well as the price contained in the prior letter, did not exhaust the right of control over those matters given to defendant in the original contract, and that it, under that contract could disregard and alter such designation at any time. Counsel for defendant also contends that there was no consideration moving from plaintiff to defendant designating, on October 25, 1917, one million or any other number of pounds to be purchased, and that under any designation made after the execution and delivery of the original contract plaintiff cannot recover except his commission on the amount of tobacco bought

by him before the exercise of the right of control reserved by defendant so as to work a termination of the employment.

It is elementary that the terms of a contract to be enforcible must be mutually binding upon all parties thereto, which characteristic is sometimes described as *bilateral* as contradistinguished from *unilateral,* and where the contract is of the latter character neither it, nor any of its unexecuted provisions so affected, may be enforced by either party because in that case the obligation or obligations forming the basis of the action are void for want of mutuality. Those principles are so well recognized and understood in the law of contracts that we deem it unnecessary to encumber the opinion with a reference to authorities. The difficulty experienced by the courts is to properly classify the particular contract under consideration; and an examination of the authorities referred to by counsel for each litigant, as well as others we have found, convinces us that each case is and must be governed largely by its own facts and the terms employed in the contract.

The excerpt from the original contract hereinbefore inserted expressly and without ambiguity or equivocation reserves to defendant, among other things, the power to "control" plaintiff in the price which he may pay for tobacco, *and in the amount* which he may purchase under the employment. In other words, it is equivalent, according to our view, to the defendant saying to plaintiff, "You shall pay for the tobacco you purchase no more than I tell you, and you shall buy no more than I consent for you to do." Such an interpretation is not only warranted by the language employed but it could scarcely have any other application, since practically all other acts of control by plaintiff of defendant are in a measure provided for in other parts of the writing, and, unless the above interpretation should be adopted, there would be nothing left to which defendant's "control" of plaintiff (by way of directions or regulations) could apply.

Plaintiff's counsel, in support of his construction of the contract, relies on the opinions in the domestic cases of Louisville & Nashville Railroad Co. v. Coyle, 123 Ky. 854; Bridgeford & Co. v. Meagher, 144 Ky. 479, and Morris Shoe Co. v. Coleman, 187 Ky. 837, and also on some foreign cases announcing similar or analogous principles. The only question involved in the Coyle case was whether

an acceptance was in the same terms of an offer, and the court held that in as much as the parties treated the acceptance as sufficient (the contract not being one to be in writing under the statute of frauds), their conduct in carrying it out, or in executing it, supplied the variance and made it mutually binding upon both parties. In the Bridgeford & Company case the contract provided for employment "for a term of three years or as long as he (employe) performs his duties in a successful or satisfactory manner, provided Bridgeford & Company are in existence." It was said, in answer to the contention that the contract was not mutual, that: "The contract was for a term of three years but could be terminated before the expiration of that period if appellee failed to perform his duties in a successful or satisfactory manner, or it went out of existence. But if he performed his duties in a successful or satisfactory manner, and it continued in business, it did not have the right to discharge him until the end of the term. Nor is the contract wanting in mutuality," which determination involved a construction of the terms of the contract, so as to impose mutual obligations on each party, in which case it was held to be enforcible. The same principle as to the true construction of the contract was involved in the Morris Shoe Company case, and it was held that its terms, coupled with the conduct of the parties, created mutual obligations and that it was neither unilateral nor void for want of mutuality.

The foreign cases relied on are of the same nature and, according to our view, none of them meets the situation here, since, as we have seen, the very letter of the writing now under consideration gave the unrestrained right to defendant, at any time, to limit the quantity of tobacco which plaintiff might purchase under his employment as well as the price to be paid by him, and, therefore, after he purchased the 124,296 pounds, it had the right to direct him, under its reserve power of controlling the quantity or size of the purchase, to purchase no more, which direction would be as effectual to terminate the contract as to do so by express language, as was done in the letter of November 14, 1917; and it is well settled that the reserve power in one of the parties to terminate the contract at any time according to his pleasure, destroys its mutuality and renders all unexecuted portions of it ineffectual, which principle is expressed in 13 C. J. 337, thus, "Where one party reserves an absolute right to

cancel or terminate the contract at any time mutuality is absent, this rule being frequently applied to contracts of sale or for the performance of service." See also Velie Motor Car Co. v. Kopmeier Motor Car Co., 194 Fed. 324, 114 C. C. A. 284; Oakland Motor Car Co. v. Indiana Automobile Co., 201 Fed. 499, 121 C. C. A. 319; Laciar v. Jackson Motor Car Co., 147 N. Y. S. 584, and Killebrew v. Murray, 151 Ky. 345.

Neither does this case come within the doctrine of that line of cases holding that a promise by an employer to his or its injured employe to give the latter employment the rest of his life in consideration of the settlement of an injury, is not void for want of mutuality on the ground that the contract contains no express promise by the employe to perform the services throughout his life, since it is held in those cases that such a promise on his part is implied from his acceptance of agreed benefits and his beginning the service; nor does it come within another line of cases wherein the seller agrees with the buyer to furnish the latter all the merchandise of the character involved which he might need or require in his business, since such a contract is construed to measure the quantity of merchandise by the amount *needed* by the purchaser in his business, and imposes upon him the duty to accept from the seller that amount. We have no such obligatory terms in the writing involved in this case, but, on the contrary, as we have seen, its very language empowers the defendant to limit, at any and all times, the amount of tobacco that plaintiff may purchase, and manifestly, if it could make such limitation in advance, it could likewise do so after any quantity of tobacco was bought.

But it is insisted that the letter of October 25 fixed the amount of the purchase at one million pounds, which contention we are not prepared to unqualifiedly accept, but even so, it is quite manifest that the power of "control" of the quantity to be purchased by plaintiff was not exhausted by the statement in that letter, and if that be true the letter did not permanently and irrevocably fix the amount of the purchase. It is conceded by counsel for plaintiff that the fixing of the price at any particular figure was not an exhaustion of defendant's control over it, which is clearly correct, since no one would contend that it was compelled to adhere throughout the seven months to the first price fixed, although in the meantime the market price might decline fifty or even a larger per

cent. The right of control over the *price to be paid* is no more extensive than the same right as to the *quantity to be purchased,* and if the first exercise of the one will not exhaust the power of control neither will it in the other. So that, if we should concede the two propositions contended for by counsel for plaintiff, *i. e.,* that the letter last referred to fixed the amount of the purchase at one million pounds, and that it was supported by a sufficient consideration (neither of which is determined), it is furthermore true, for the reasons stated, that defendant had the right to disregard it for the reason that its power of control over the quantity to be purchased was not thereby exhausted.

Since, therefore, there is nothing in the contract, expressly or by reference to the needs, requirements, etc., of defendant, to measure the quantity of the article for which plaintiff was employed to purchase, except its arbitrary will, the alleged contract is clearly one where one of the parties has the right to terminate it at pleasure, which, if exercised, destroys the right of the other party to enforce liability for all of its unexecuted portions. Supporting our interpretation of the writing here involved, as we interpret it, is the case of Goff v. Saxon, 174 Ky. 330, and another illustrative and somewhat analogous one is Rehm-Zeiher Co. v. Walker, 156 Ky. 6. The only difference between the Goff case and this one is that the action was brought therein by the employer to enjoin the employe from violating an independent clause of the contract wherein the latter agreed to not perform similar services within the prescribed territory except for plaintiff as provided in the contract. In other words, the enforcement of the contract in that case was sought by the employer instead of the employe as in this case, and the court held that no relief could be granted because of want of mutuality. It was conceded in the opinion that the employe had bound himself to perform certain duties beneficial to the employer but the latter's obligations were limited, by the alleged contract, to only such business or services as she saw proper to assign or permit the employe to do; and it was held that under the terms of the contract "He (the employe) must do what she (the employer) assigned or permitted him to do and she need not permit him to do anything or assign him anything to do." The contracts involved in the two cases are so similar as to render the one conclusive of the other, since there can be no difference in the interpreta-

tion of the contract whether the action be brought to enforce it by one of the parties or the other.

But, it is insisted that to so interpret the contract declared on in this case would work a great hardship upon plaintiff, which insistence may be disposed of by the statement that the same was true in the cases referred to, as well as in many other instances involving contract obligations. It works a hardship on a surety to pay the debt of the principal when the former received no part of the consideration. Likewise, is it a hardship to apply the legal measure of damages against the purchaser for his refusal to carry out a contract for the purchase of a commodity to be delivered in the future and at which time the market price had declined far below that agreed in the contract; but no such considerations are allowed to influence the court in administering the law according to settled principles. As in the two illustrations the visited hardship was the result of, and flowed from, a voluntary agreement of the sufferer which it was lawful for him to make, so here the predicament of plaintiff was produced by his becoming enmeshed in the inserted terms and stipulations in his contract to which he consented and the law withholds from him any right to complain. The parties are *sui juris,* and no fraud is alleged or relied on, and our duty ends on an enforcement of the contract according to its express terms. 13 Corpus Juris, 627.

We, therefore, conclude that the court erred in not sustaining the motion for a peremptory instruction, and the judgment is reversed with directions to grant a new trial and for proceedings consistent with this opinion.