# Ham v. Miss C. E. Mason's School, The Castle, Inc.

(Decided May 30, 1933.)

HUBBARD & HUBBARD for appellant.
GAVIN H. COCHRAN for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The suit is by a corporation, styled "Miss C. E. Mason's School, The Castle, Incorporated," to recover of M. F. Ham $584.31 claimed as a balance due on tuition and board of the defendant's daughter for the school year 1928-1929. The school is located at Tarrytown, N. Y. The contract sued on was in the form of an application for admission to the school, and con-

tained a series of answered questions. It was dated December 29, 1927, and bears Dr. Ham's signature. The application contains this statement:

"I agree that the pupil is entered for the entire year and that I am responsible for full payment for board, room, tuition and all extra charges from the date of her admission until the end of the school year in May, notwithstanding her dismissal or withdrawal, except for permanent ill health."

This paper declares that the signer had read it and the terms and conditions stated in the current catalogue of the school and that he agreed to comply with and be bound by the terms stated therein. The catalogue contained the tuition and other fees chargeable and payable. It also provided that "it is understood that agreements are made for the year," and contained the further stipulation:

"Students will be charged from date of entrance to close of school year except in the case of permanent ill health of the student, in which case of illness and in no other case of withdrawal, and in no case of dismissal, the principal will surrender a portion of $300, the amount charged for table board, proportionate to the time the student is in school."

The petition alleged that the sum payable for the year, with certain discounts and a proportionate allowance for table board, amounted to $1,427.26, on which the defendant had paid $842.95.

The answer and counterclaim denied the defendant had entered into the contract sued on or had agreed or promised to pay the sums claimed or any sum. The defendant alleged that, because of his mental and physical state during the month of December, 1927, due to serious injuries received by being struck by an automobile a few months previous, he was not capable of entering into a contract; that he had no recollection of signing the paper set up in the petition; that the application for admission for his daughter into plaintiff's school had been obtained by fraud and deceit; and that the paper was not a legal contract. It was admitted that the defendant had entered his daughter in the school, intending to keep her there for a full year, but with the belief and understanding that he had the right to withdraw her at any time. It was further alleged

that she had remained in the school from the latter part of September, 1928, until some time in January, 1929, when it had become necessary for her to withdraw because she had become sick on account of insufficient heat in the building, the plaintiff had refused to permit communication with her parents when she was sick, and because she had been publicly reprimanded for making complaint to her parents of the conditions in the school. As a counterclaim it was charged that the defendant had overpaid the plaintiff $352.05 for the time his daughter had remained in the school, and judgment for that sum was asked over against the plaintiff. Upon the trial of the issues joined, a verdict for the plaintiff was returned for the full amount asked, and the appeal is from the judgment entered thereon.

The evidence introduced by the defendant sustained his plea of mental and physical incapacity on the date the writing was signed by him, but there is contradictory evidence showing that, when he signed the paper, he was fully competent of doing so and was cognizant of what he was doing, although the seriousness of his injuries is not minimized. We need not notice that evidence with particularity, for the issue went to the jury, and there is no claim that it should not have been submitted.

The contract was signed in Oklahoma City, where Dr. Ham was then residing, but the matter of sending his daughter to the school had been discussed with a representative of the institution by him and his family during the previous summer when he was living in Anchorage, Ky., and before he sustained his injuries. At the time the paper was signed Mrs. Ham gave a check for $50 drawn on Dr. Ham's account, as a deposit or advancement. The defendant after his recovery knew that his daughter was in the school and he paid sums to it from time to time on account of her tuition and expenses. The young lady had returned home for the Christmas holidays of 1928 and gone back to the school. She complained of the lack of heat in her room and some of the school rooms, to which she attributed a severe cold contracted. There is also some evidence to support the claim of mistreatment along the lines indicated, although it is not very persuasive. On the other hand, the evidence of plaintiff tended to prove otherwise and to show that the claim of mistreatment was

groundless. There was also some evidence indicating that the young lady left the school for the purpose of being married. These issues were submitted to the jury, and there is no question raised as to the sufficiency of the evidence to support the verdict for the plaintiff.

The reasonableness and legality of the provisions for payment of tuition and expenses for the entire school year in case of withdrawal, except for stipulated causes, are not questioned. See 24 R. C. L. 30; Hall v. Mt. Ida School for Girls, 258 Mass. 464, 155 N. E. 418, 50 A. L. R. 1495; Holton v. Cook, 181 Ark. 806, 27 S. W. (2d) 1017, 69 A. L. R. 709; Kentucky Military Institute v. Bramblet, 158 Ky. 205, 164 S. W. 808.

The principal argument on the appeal is that the contract sued on was unilateral or unenforceable because it was lacking in continuing mutuality. The formation of the contract was an offer and acceptance. The paper itself was simply an application for admission, and is to be construed as a proposal to place the defendant's daughter in the school under its terms and the stipulations in the catalogue. The offer contemplated a bilateral contract. It is true that there was no specific or express agreement or undertaking on the part of the school to do anything, and it might have refused to accept the pupil, or to open school, and the defendant would probably have had no recourse. However, the plaintiff reserved a place for the young lady, and she entered the school in September following and attended it for four months. The offer or proposal was therefore accepted, and the contract partially performed and a wish expressed to complete the performance by the other party who might not have been bound at its inception. The subsequent action and course of performance ripened the unilateral contract into a binding and enforceable obligation. This was an entire and indivisible contract. There was an implied promise to continue the school once begun for the term stipulated and contemplated. We do not understand that, if the plaintiff had closed its school or arbitrarily dismissed the pupil before the completion of the year, there could have been no recourse against it. The acceptance of the offer made the contract binding alike on both parties according to its express and implied terms. Both parties entered upon its performance, and it became a

mutual obligation, whether it was so or not at its inception. 6 R. C. L. 686, 687, 690. The cases relied upon by the appellant are: Rehm-Zeiher Company v. F. G. Walker Company, 156 Ky. 6, 160 S. W. 777, 49 L. R. A. (N. S.) 694; Combs v. Hazard Ice & Storage Company, 218 Ky. 29, 290 S. W. 1035; and Goff v. Saxon, 174 Ky. 330, 192 S. W. 24. The first two cases fall within the rule that, where a power is reserved to one of the parties to comply with or terminate a contract at any time according to his pleasure, that reservation destroys its mutuality and renders the unexecuted part unenforceable. Killebrew v. Murray, 151 Ky. 345, 151 S. W. 662; Daniel Boone Coal Company v. Miller, 186 Ky. 561, 217 S. W. 666; Rodgers v. Larrimore & Perkins, 188 Ky. 468, 222 S. W. 512; Louisville Tobacco Warehouse Company v. Zeigler, 196 Ky. 414, 244 S. W. 899. The Goff Case is different, in that there was never any obligation on the part of one of the parties to do anything, and she did nothing, and there was no way by which she could have been compelled to do anything or to be responsible for such failure. There is no reservation in this contract. The offer as a whole was accepted, and the school undertook thereby to comply with its terms without any reservation to discontinue its performance. A contract is not void for lack of mutuality if the party who was not bound at the inception has nevertheless complied with its conditions. Allen v. New Domain Oil & Gas Company, 73 S. W. 747, 24 Ky. Law Rep. 2169; Peck-Williamson Heating & Ventilating Company v. Miller & Harris (Ky.) 118 S. W. 376; Bridgeford v. Meagher, 144 Ky. 479, 139 S. W. 750; Pennagrade Oil & Gas Company v. Martin, 211 Ky. 137, 277 S. W. 302; Kelley v. Ivyton Oil & Gas Company, 204 Ky. 804, 265 S. W. 309; Jefferson Woodworking Company v. Mercke, 222 Ky. 476, 1 S. W. (2d) 532. We regard the contract as valid.

Appellant submits that it was error to refuse the admission of testimony showing that during the period before and after he signed the instrument sued on he was being paid large monthly accident insurance indemnities because of total disability. No reason or authority is suggested to sustain the point, and we know of none. The fact that a third party regarded the defendant disabled within the terms of their contract was wholly irrelevant to this issue.

The court sustained objections to the questions eliciting the opinions of two or three lay witnesses as to the defendant's mental capacity to make a contract. They were permitted to describe and state facts within their knowledge concerning his actions and appearance and general condition in so far as they threw any light on his mental state. While it is held in this jurisdiction that such opinion evidence is admissible, in view of the admission of much other evidence on that subject, the offered testimony would have added so little to the case the error is unsubstantial, and doubtless was without effect on the result.

It is also asserted that it was error to introduce the school catalogue in evidence. It was filed as an exhibit and made a part of the petition by reference. While it contained pictures and much that had no bearing on the issues, it did contain an essential part of the contract sued on. Thereafter, during the course of the trial, counsel for appellant put the petition in evidence, and it was considered as read. That, of course, carried with it all exhibits. Looking beyond whatever effect this action may have had as a waiver of the previous objection, it may be said that the objection should have pointed out what portion of the catalogue the appellant regarded as improper to admit. Harrod v. Armstrong, 177 Ky. 317, 197 S. W. 816; Hall v. Commonwealth, 189 Ky. 72, 224 S. W. 492; Madden v. Commonwealth, 237 Ky. 703, 36 S. W. (2d) 346. Not having done so, it was properly overruled.

There is some technical criticism of one or more of the instructions. On the whole, the instructions clearly and fairly submitted the issues. The jury doubtless considered them in their plain, ordinary meaning, and never noticed or regarded them as susceptible of the strained and technical construction put upon the language by counsel.

Perceiving no error prejudicial to the substantial rights of the appellant, the judgment is affirmed.