248 N.J. Super. 474 (1991)
591 A.2d 685
THE PRINCETON MONTESSORI SOCIETY, INC., PLAINTIFF-APPELLANT,
v.
ALAN LEFF, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 30, 1991.
Decided June 3, 1991.
*475 Before Judges MICHELS, GRUCCIO and D'ANNUNZIO.
Dennis J. Helms argued the cause for appellant (Mathews, Woodbridge & Collins, attorneys; Dennis J. Helms, of counsel and on the letter brief).
Sharon Handrock Moore argued the cause for respondent (Gebhardt & Kiefer, attorneys; Sharon Handrock Moore, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
*476 Plaintiff The Princeton Montessori Society, Inc. appeals from a judgment of the Law Division, Special Civil Part that dismissed its complaint for the balance due under its tuition contract and awarded defendant Alan Leff $5,000 on his counterclaim in this breach of contract action.
Plaintiff is licensed by the State of New Jersey to operate a private school. In the Spring of 1989, plaintiff began its application process for the 1989-90 school year. On or about April 1, 1989, defendant enrolled his daughter, Fay, in plaintiff's school and signed a "Junior Contract." In accordance with the terms of the contract, plaintiff agreed to accept defendant's daughter as a student for the period beginning September 1989 and ending May 1990, and defendant agreed to pay tuition fees of $6500 for the full contracted year, development fees of $750 and a junior activities fee of $150. The contract also provided that no tuition would be refunded if a student withdrew or the school dismissed the student at any time throughout the school year. The contract, which contained a tuition payment schedule, in pertinent part, provided:
The undersigned parent or guardian (the "Parent") of the student agrees to pay tuition fees of $6500 for the full contracted year. As a convenience to the undersigned, the tuition may be paid as follows:

 Payment I May 1, 1989 $1200
 Payment II July 1, 1989 $1200
 Junior Activities Fee July 1, 1989 $ 150
 Payment III August 15, 1989 $1200
 Payment IV November 1, 1989 $1200
 Payment V February 1, 1990 $1200
 Payment VI March 1, 1990 $N/A
 Due with return of contract:
 Non-refundable Contract Deposit $ 500
 Non-refundable Development Fee $ 750

*477 The Parent understands that the obligation to pay the fees for the full year is unconditional and that no portion of such fees paid or outstanding will be refunded or cancelled in the event of absence, withdrawal or dismissal from the School of the above Student.
Plaintiff also offered defendant the opportunity to participate in the Tuition Refund Plan whereby plaintiff could purchase insurance for 2.2% of the annual tuition fees to provide for paying the tuition if the child withdrew. However, defendant elected not to participate in the Tuition Refund Plan. The contract explained the Tuition Refund Plan as follows:
In view of this obligation, the Parent understands that the option to participate in the Tuition Refund Plan is being made available at this time to protect the yearly financial obligation under the terms of this enrollment contract. This program will give the Parent an opportunity to insure fees (prepaid and due) in the event of separation according to the terms of the policy.
It is imperative that either Option A or B be checked below to indicate the Parent election of the Tuition Refund Plan.
___ A. The parent elects to participate in the Tuition Refund Plan. It is understood that the premium cost will be billed to the Parent when the Registrar sends the Parent a copy of the signed contract. The premium rate will be 2.2% of the annual tuition fees (see enclosed letter listing premiums for each program). This plan is in effect only after the Student has been in attendance a minimum of 24 school days. The Parent authorizes the School to collect any claim payment entitled to the Parent under the Tuition Refund Plan and credit the balance due, paying any excess to the Parent. The Parent agrees to pay the School whatever balance remains unpaid, after any payment by the Plan is made, within 30 days after receipt of a final, itemized bill from the School.
X B. The Parent does not elect to participate in the Tuition Refund Plan. The Parent understands that no refund or cancellation of the annual tuition fees will be made by the School for absence, withdrawal or dismissal before the end of the school year and herewith agrees to assume full responsibility for the full annual fees.
Prior to the opening day of school, defendant paid plaintiff $5,000 of the agreed upon tuition. Regular classes began on September 11, 1989. Defendant withdrew his daughter from the school on October 10, 1989, apparently because she was unhappy in the program. At that time, he owed $2,400 for the remainder of the year's tuition and a $100 late charge.
*478 When defendant refused to pay the balance due under his contract, plaintiff instituted this action in the Law Division, Special Civil Part. Defendant denied liability and counterclaimed for a refund of his $5,000 payment. At the conclusion of a bench trial, the trial court found that even though defendant breached the contract, plaintiff had a duty to mitigate damages, which it failed to do, and plaintiff suffered no loss due to Fay's withdrawal. The trial court also found that the strict requirements of the contract to pay the fees and tuition constituted an unenforceable civil penalty, not liquidated damages. We disagree and reverse.
Under a contract whereby an educational institution agrees to provide instruction for a specified period and a parent of a student agrees to pay a definite sum for tuition and similar charges in consideration therefor, we hold that where the contract expressly provides that no deduction or refund will be made, the entire tuition is payable despite the fact that the student withdraws from school. In these circumstances, the educational institution has no duty to mitigate damages. This decision is consistent with the principles enunciated in Tabor Academy v. Schwartz, 129 N.J.L. 390, 30 A.2d 22 (E. & A. 1943) and discussed in Alexander Hamilton Inst. v. Calkins, 112 N.J.L. 170, 170 A. 54 (Sup.Ct. 1933) and is supported by the majority of jurisdictions. See Wentworth Military Academy v. Marshall, 225 Ark. 591, 283 S.W.2d 868 (1955) (parents obligated to pay full tuition for withdrawn cadet); Stewart v. Claudius, 19 Cal. App.2d 349, 65 P.2d 933 (1937) (contract to furnish instruction for specified period of time is entire and therefore, school entitled to whole sum agreed upon); Hoadley v. Allen, 108 Cal. App. 468, 291 P. 601 (1930) (recognizing entire contract principle); Hitchcock Military Academy v. Myers, 76 Cal. App. 473, 245 P. 219 (1926) (in view of stipulation that academy accepted cadets only for entire year and that tuition would not be reduced for withdrawal, academy entitled to recover unpaid tuition); Bergman v. Bouligny, 82 A.2d 760 (D.C.Mun.App. 1951) (contract for schooling for specified period is entire and if *479 student withdraws for personal reasons, school is entitled to agreed tuition for the entire period); Georgia Military Academy v. Rogers, 35 Ga. App. 789, 134 S.E. 829 (1926) (entire contract principle allows academy to recover full tuition); Northwestern Military & Naval Academy v. Wadleigh, 267 Ill. App. 1 (1932) (written application for admission to academy together with catalog, which provided tuition and other charges non-refundable, constituted entire and indivisible contract, entitling academy to recover unpaid balance of tuition); Ham v. Miss C.E. Mason's School, The Castle, Inc., 249 Ky. 478, 61 S.W.2d 7 (1933) (because contract provided for entire year's enrollment and parents responsibility for full payment of tuition, court affirmed judgment for school for amount of unpaid tuition); Penny v. Spencer Business College, Inc., 85 So.2d 365 (La. App. 1956) (under contract with school, plaintiff not entitled to refund of tuition because she became sick and unable to undertake scheduled course of study); Missouri Military Academy v. McCollum, 344 S.W.2d 636 (Mo. App. 1961) (entire contract payable despite student's withdrawal from school); Drucker v. New York Univ., 59 Misc.2d 789, 300 N.Y.S.2d 749, affirmed, 33 A.D.2d 1106, 308 N.Y.S.2d 644 (1969) (enrollment contract entire and indivisible and therefore, student not entitled to recover tuition paid since he breached contract without cause); Van Brink v. Lehman, 199 A.D. 784, 192 N.Y.S. 342 (1922) (endorsing entire contract principle); William v. Stein, 100 Misc. 677, 166 N.Y.S. 836 (1917) (school's complaint to recover balance due on contract for tuition and board, which expressly provided no reduction for absence or withdrawal except in case of protracted illness, improperly dismissed); Brenner v. Little Red School House, Ltd., 302 N.C. 207, 274 S.E.2d 206 (1981), appeal after remand, 59 N.C. App. 68, 295 S.E.2d 607 (1982), review denied, 307 N.C. 468, 299 S.E.2d 220 (1983) (contract providing for nonrefundable payment of tuition is enforceable as written); Vidor v. Peacock, 145 S.W. 672 (Tex.Civ.App. 1912) (parent's obligation for tuition not discharged *480 by son's illness which rendered son incapable of attending school).
In Tabor Academy v. Schwartz, 129 N.J.L. at 390, 30 A.2d 22, defendant enrolled his two sons in plaintiff boarding school in the Fall of 1938. The contract provided that "[t]he fee for the school year 1938-39 is fourteen hundred dollars, an inclusive charge for tuition, room, board and laundry.... Payments for tuition become due twice a year, one-half on October first and the balance on February first * * * In the case a boy ceases to retain his membership in the School for any reason, either through a decision of the parent or through disciplinary action by the School, the parent is responsible for the full tuition fee and must sustain the financial loss involved." Id. The two sons withdrew from the school because they were unhappy. At that time, the headmaster said to defendant that he thought the deposit would cover the time that the two sons spent at the school. A few days later, the principal wrote to defendant, stating that "our understanding with the parents is for the full year ... but ... it has been our policy to share the loss. I have no authority to make arrangements for our treasurer, but I am asking him to cancel the second half year of our agreement...." Id. at 391, 30 A.2d 22. The treasurer refused to accept the principal's recommendation. The former Court of Errors and Appeals noted that this case was one to recover full tuition or nothing. The Court found that the headmaster's and principal's statements did not amount to a rescission of the contract. The Court held:
The trustees, who operate a boarding school, have each year the problem of determining the number of pupils who will attend so that a budget may be made up which will insure a proper balancing of receipts and expenses.
The contract in suit is the usual form. The breach being clear, we think there should have been a direction of a verdict in favor of the plaintiff. [Id. at 392, 30 A.2d 22].
The Court found that the entire contract was payable despite the fact that defendant's sons withdrew from the school.
In Head v. Thies, 106 N.J.L. 281, 150 A. 191 (Sup.Ct. 1930), the former Supreme Court found that defendant, on withdrawing *481 his son before the second half of the school year, became obligated to pay only one-half of the annual fee as liquidated damages. The Court, based on an express provision allowing for a reduction in tuition if a student withdrew before the second half of the school year, reasoned:
The next point is that the court rejected questions to plaintiff on cross-examination, tending to show what had been saved in food and cost of incidentals by the son not having been at the school; and that the court refused to enter judgment for nominal damages because of lack of such proof. This argument is based on the line of cases typified by Kehoe v. Rutherford, 56 N.J.L. 23; Wilson v. Borden, 68 Id. 627, & c.; but those cases are inapplicable because as we read the contract as contained in the catalogue and entry blank, the damages in case of notice of withdrawal before December 1st are stipulated at half the annual fee. That fee, as stated in the contract, was from $1,150 to $1,350. Plaintiff averaged it at $1,250 and in the letter of September 26th, stated $625, or half of $1,250 as the amount. Whether this should have been more or less is immaterial in view of the concession by the plaintiff, based on his letter of September 26th and to which the court was justified in finding from defendant's silence that he had assented, that one-third of $1,250 less the $25 paid would be accepted in full satisfaction. Naturally $416.67 is less than half of the minimum five-day annual rate of $1,150, and so defendant has no reason to complain. This disposes of the third point, that "the amount of the judgment bears no logical or proper relation to the contract price." This may be conceded for the nonce; but if defendant should desire a judgment entered according to the terms of the contract, that judgment would be for $575 less $25, instead of $391.67 as now entered. [Id. at 283-84, 150 A. 191].
The Court's result endorses the "entire contract" principle, which provides that the entire contract is payable unless provision is made to the contrary.
The only case in New Jersey which appears to reject the entire contract principle is Fayman v. Trustees of Burlington College, 103 N.J. Super. 476, 247 A.2d 688 (Ch.Div. 1968). In Fayman, plaintiffs brought suit against defendant school to compel the school to issue the transcript of grades for their daughter, a former student. The school filed a counterclaim for damages of $425, half of the $900 tuition, based on plaintiffs' breach of a reenrollment contract. Plaintiffs' daughter attended the school for approximately six years. In the Spring of 1967, plaintiffs signed a reenrollment contract to readmit their daughter the following Fall. At the same time, plaintiffs paid a $50 deposit which "was required to save a place in the *482 school." Id. at 477, 247 A.2d 688. In September 1967, plaintiffs notified the school that they were withdrawing their daughter and requested a release from the reenrollment contract. The school refused to cancel the contract because it saved a place for plaintiffs' daughter, and it was too late to secure a satisfactory replacement for her. As a result of plaintiffs' refusal to pay the tuition, the school refused to issue a transcript. The court found that the school properly refused to issue plaintiffs a transcript since withholding the transcript was the only means short of litigation by which the school could enforce plaintiffs' obligation. The court next addressed plaintiffs liability for the tuition and found that:
there was a valid and enforceable contract between Maurice S. Fayman and defendant trustees whereby St. Mary's Hall was to reenroll Samuella as a student, to reserve a place for her and to furnish her with schooling for the year 1967-68; plaintiff Fayman in turn paid the $50 enrollment fee and bound himself to pay tuition of $900 for the year. The court also finds that he breached this agreement. There was insufficient evidence presented to prove any oral modification of that agreement. Furthermore, the court does not find any justifiable ground upon which Fayman may avoid his obligation. This is particularly true where neither Mr. nor Mrs. Fayman made any definite statement with regard to Samuella's withdrawal until September 1967. For these reasons the court holds Fayman liable to pay Samuella's tuition; however, since defendant has complied with its legal duty to mitigate damages by obtaining a replacement for Samuella in the second semester, the damages of $425 are for the first semester only. Tabor Academy v. Schwartz, 129 N.J.L. 390 [30 A.2d 22] (E. & A. 1943); Bergman v. Bouligny, 82 A.2d 760 (D.C.Mun. App. 1951). [Id. at 478, 247 A.2d 688].
The court recognized the entire contract principle by holding plaintiffs liable for the tuition. However, the court then deviated from the entire contract principle by finding that the school "complied with its legal duty to mitigate damage by obtaining a replacement...." Id.
We disagree with the Fayman decision to the extent that it deviates from the entire contract principle and requires an educational institution to mitigate damages. A duty to mitigate damages contravenes the policy behind the entire contract principle as developed by our former Court of Errors *483 and Appeals and applied by a majority of the courts throughout the country. See 78 C.J.S., Schools and School Districts, § 9.
Here, defendant contracted to pay plaintiff the tuition for the entire school year. In consideration therefor, plaintiff promised to reserve a place in its Junior I program for defendant's child, to make all preparations necessary to educate the child for the school year and to teach the child during that period. Both parties received valuable consideration under the terms of the contract. Plaintiff's performance is sufficient consideration for defendant's tuition payment. An educational institution, such as plaintiff's school, must make arrangements for the education of its students on a yearly basis, prior to the commencement of the school year. Educational institutions predicate many of these arrangements upon the number of students enrolled (e.g., the teaching materials to order, the number of teachers to hire, and the desks and other equipment that the pupils will use). Therefore, although defendant did not receive the full consideration contemplated by the contract, he did receive consideration sufficient to enforce the contract.
Furthermore, the contract explicitly states that "The Parent understands that the obligation to pay the fees for the full year is unconditional and that no portion of such fees paid or outstanding will be refunded or canceled in the event of absence, withdrawal or dismissal from the School of the above Student." Plaintiff also offered a Tuition Refund Plan to protect defendant's yearly financial obligation under the terms of the contract. The contract provisions allocated to defendant the risk that his daughter would not attend. Since the terms of the contract are clear and unambiguous, we are bound to enforce it as written. James v. Federal Ins. Co., 5 N.J. 21, 73 A.2d 720 (1950); Levison v. Weintraub, 215 N.J. Super. 273, 521 A.2d 909 (App.Div.), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987); Atlantic Casualty Ins. Co. v. Interstate Ins. Co., 28 N.J. Super. 81, 100 A.2d 192 (App.Div. 1953). Moreover, enforcing the contract as written is consistent with the prior *484 decisions of our former highest court and in accordance with the view of the majority of other courts in this country.
Accordingly, we reverse the judgment under review and dismiss defendant's counterclaim with prejudice. We enter judgment in favor of plaintiff, awarding it damages in the sum of $2400 together with interest and costs against defendant.