### MAY v. LEE.
### No. 9470.

Court of Civil Appeals of Texas. Galveston.
April 25, 1930.

Rehearing Denied May 22, 1930.

L. R. Patton, of Galveston, for appellant.

McDonald & Wayman and H. E. Kleinecke, Jr., all of Galveston, for appellee.

PLEASANTS, C. J.

This suit was brought by appellant to restrain appellee from continuing in the employment of Clarke & Courts, a business corporation domiciled in the city of Galveston. Upon the presentation of the petition, the trial judge, without a hearing, granted a temporary injunction as prayed for. In due time appellee filed a motion to dissolve, which was granted.

This appeal is from an order dissolving the temporary injunction.

Appellant's suit is based upon a contract. The following sufficiently full and accurate statement of the pleadings of appellant and the contents of the contract on which his suit is based is copied from appellee's brief:

"Appellee, on or about February 11, 1929, entered into a written contract of employment with appellant to begin February 14th, 1929, and continue indefinitely as long as appellee's services were satisfactory. He was to perform engineering work, the nature of which is not disclosed either by the pleadings or the contract. Neither makes it to appear what duties appellee was to perform except that he was to give 'the best of his ability towards the work of engineer' in making 'surveys' of manufacturing plants.

"It is alleged, in substance, and the contract in terms provides:

"'The party of the first agrees to employ the party of the second part commencing February 14th, 1929, and continuing indefi-nitely as long as the services of the party of the second part are satisfactory. The party of the first part reserves the right to terminate this agreement at any time without notice.'

"'Following this there are paragraphs providing for a monthly salary of $250.00 per month, provisions for a bonus on fees collected, agreement to pay travelling and hotel expenses, for securing information concerning prospective clients and for getting commendatory letters from clients. The contract then reads:

"'In consideration of the foregoing the party of the second part agrees to enter the employ of the party of the first part according to the terms hereinbefore mentioned beginning February 14th, 1929, and continuing until further notice as stated above.

"'The party of the second part agrees to further the interests of the party of the first part by giving the best of his ability towards the work of engineer and to protect the interest of the party of the first part at all times. The party of the second part also agrees not to leave the employ of the party of the first part when he is occupied on an assignment, and does hereby agree to pay $1,000.00 (One Thousand Dollars) to the party of the first part as damages if he should leave the employ of the party of the first part when he is occupied on an assignment.

"'The party of the second part agrees not to enter the employ of any clients of the party of the first part for a period of one year after he may terminate any work in a client's plant, without first securing written permission from the party of the first part, and does hereby agree to pay $5,000.00 (Five Thousand Dollars) to the party of the first part as damages if he should enter the employ of any clients of the party of the first part without securing written permission.'

"There are allegations to the effect that appellant secured a contract to 'survey' the business of Clarke & Courts at Galveston, Texas, and that he, on February 20, 1929, assigned appellee to the work, in which he engaged until March 30, 1929, when he resigned and abandoned his employment with appellant. It is then averred by appellee, on or about June 15, 1929, without securing written permission from appellant, entered the employ of Clarke & Courts and continued this employment up to the time the suit was filed, and that this constituted a breach of the restrictive covenant set out in the contract. It is further alleged that appellee is a highly skilled, capable employee and was well qualified for the position to which he was detailed by appellant, and that his services were satisfactory to appellant. The prayer in the petition is for an injunction to restrain appellee from continuing his employment with Clarke & Courts."

204

In this motion to dissolve, appellee excepted to the petition on the ground "that (a) it fails to set forth a cause of action entitling appellant to injunctive relief, (b) the contract sued on is void in that it is lacking in mutuality of obligation and remedy, is unilateral and too uncertain to constitute a contract, and (c) because the petition fails to show that he did not have an adequate remedy at law."

Answering, appellee admitted that he entered into the alleged contract; that appellant secured an agreement to survey the business of Clarke & Courts at Galveston, and that he assigned appellee to make such survey, which he did make, completing it on or about the 30th of March, 1929; that after completing the survey he tendered his resignation to appellant, which was accepted. He admitted that he did thereafter apply to and was given employment by Clarke & Courts.

■ This appeal presents two questions, the first being whether the alleged contract sought to be enforced by appellant is a valid and binding obligation enforceable against appellee, and, the second, whether appellant in any event is entitled to the equitable remedy of injunction to restrain appellee from violating his alleged contract.

We think both of these questions must be answered in the negative. Appellant assumed no obligation under the contract which can be regarded as a consideration for appellee's obligation not to accept employment from any client or employer of appellant during a period of one year after appellee may have finished any work he may have done for such client under his contract of employment by appellant, without written permission from appellant to accept such employment.

■ By the terms of the contract appellant was under no obligation to employ appellee for any specific time, but the contract expressly provides that appellant could terminate the employment at any time without notice to appellee. There being no definite time during which the contract of employment should continue, it was terminable at the will of either party.

After finishing his work for appellant with Clarke & Courts, appellee elected to quit the service of appellant, and two and one-half months thereafter entered the service of Clarke & Courts. The contract, except in so far as it was executed, is, we think, an unilateral agreement, and, there being no consideration for the performance by appellee of the unexecuted provisions of the contract, such provisions cannot be enforced against him.

The only considerations for the execution of the agreement were the mutual promises and obligations of the parties. The only promise made by appellant was to employ appellee for such length of time as appellant desired and to pay him for his services the amounts specified in the agreement. Under this agreement appellant was not bound to employ appellee for even a day or an hour, nor was appellee bound to work for appellant for any length of time.

This agreement furnishes an apt illustration of a unilateral contract which is unenforceable by either party, except to the extent it has been executed. Appellant was bound to pay appellee the amounts specified in the agreement for the services rendered by appellee, and, so long as appellee continued in the service of appellant, he was bound to properly perform his work and to further the interest of appellant. But when the execution of the contract ceased, its unilateral character rendered its unexecuted portion unenforceable for lack of consideration. In Elliott on Contracts, vol. 1, p. 338, the rule is thus stated: "Whether the contract rests upon a valuable consideration must be determined by the conditions as they exist when it is made, not as they may be at some subsequent time (Casserleigh v. Wood [C. C. A.] 119 F. 308), and in the absence of any sufficient consideration the law supplies no means and affords no remedy to compel the performance of a simple executory agreement made without consideration; such a contract is a nude pact, and not binding in law no matter how strongly it may appeal to the conscience."

The case would be different if there was any consideration for the contract other than the mutual promises of the parties, but such independent consideration is not shown. The following quotation from Ruling Case Law illustrates and supports this rule: "As a promise by one person is merely one of the kinds of consideration that will support a promise by another, mutuality of obligation is not an essential element in every contract. Therefore, to say the least, language which is susceptible of the interpretation that consideration and mutuality of obligation are two distinct elements lacks precision. Consideration is essential; mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise. The doctrine of mutuality of obligation appears therefore to be merely one aspect of the rule that mutual promises constitute considerations for each other. Where there is no other consideration for a contract, the mutual promises must be binding on both parties. But where there is any other consideration for the contract, mutuality of obligation is not essential." 6 R. C. L. §§ 93, 686, 687.

This same author, in section 94, 6 R. C. L., makes the additional observation: "As a unilateral contract is not founded on mutual promises, the doctrine of mutuality of obligation is inapplicable to such a contract. If the promisor has received a consideration, his promise is binding, and may aptly be termed

an obligation; but, as there is no promise on the part of the promisee, there can be no mutual obligations. * * * An option supported by a consideration furnishes another illustration of a contract which is valid notwithstanding the lack of mutuality"—citing cases.

This rule is discussed and applied by our Supreme Court in the case of Johnson v. Breckenridge, etc., 257 S. W. 223, and in the following cases from other jurisdictions: Goff v. Saxon, 174 Ky. 330, 192 S. W. 24; Louisville Tobacco Company v. Zeigler, 196 Ky. 414, 244 S. W. 899; Vogel v. Pekoc, 157 Ill. 339, 42 N. E. 386, 30 L. R. A. 491.

■ If, however, the contract sued upon could be held enforceable, there is nothing in the facts of this case to authorize an injunction restraining appellee from violating his alleged contract.

Neither the pleading nor the evidence present any facts tending to show that appellant will suffer irreparable injury unless appellee is restrained from continuing in the employment of Clarke & Courts, and, if the provision of the contract by which appellee agrees "not to enter the employ of any client of appellant for a period of one year after he may terminate any work in the client's plant" can be held valid and binding, appellant has his legal remedy by suit for the damages fixed in the contract, which must be deemed full and adequate under the pleading and evidence in this case.

There is nothing in the pleading or the evidence to show that the full protection of all of appellant's property and business rights requires the enforcement by injunction of appellee's agreement not to continue in the service of Clarke & Courts.

■■ In cases of this kind the burden is upon the party seeking the injunction to show facts which require equitable relief, and an injunction will only be granted where the circumstances are such that the enforcement of the contract by injunction is both reasonable and necessary to protect the plaintiff in his business or property rights. Southern Properties v. Carpenter (Tex. Civ. App.) 21 S.W. (2d) 372; Byers v. Abstract Company (Tex. Civ. App.) 18 S.W.(2d) 1096; Gossard v. Crosby, 132 Iowa, 155, 109 N. W. 483, 6 L. R. A.. (N. S.) 1115.

In the case of Miller v. Chicago Portrait Co., 195 S, W. 619, 621, Chief Justice Fly, speaking for the Court of Appeals for the Fourth district, states the reason for this rule as follows:

"The contract in this case is aimed at the right to obtain employment in a similar business. It is an attempt to restrain the right to earn a living. As said in an Ontario case, Allen Mfg. Co. v. Murphy, 23 Ont. L. Rep. 467,

cited in note to Kinney v. Scarbrough Co. [138 Ga. 77, 74 S. E. 772], 40 L. R. A. (N. S.) 473:

" 'Restraints which may fairly be regarded as entirely reasonable when imposed in connection with the sale of a business or good will, or with the transfer of patent rights or of a trade secret, or with the dissolution of a partnership, should not be accepted in all cases as necessarily or even approximately applicable to restraints imposed upon employees to whom the only consideration for their covenant is employment and receipt of wages or remuneration for a more or less certain number of years.' "

The conclusions above expressed require an affirmance of the judgment, and it has been so ordered.

Affirmed.