## MARTIN v. HAWLEY.
### No. 11256.

Court of Civil Appeals of Texas. Dallas.
May 28, 1932.

Dallas C. Biggers and Roy W. McDonald, both of Dallas, for appellant.

D. A. Frank, of Dallas, for appellee.

JONES, C. J.

This is an injunction suit instituted by appellant, A. D. Martin, in a district court of Dallas county, Tex., seeking to enjoin appellee, J. W. Hawley, from engaging in any manner, or becoming connected in any manner, with a competitive business of the Electrified Water Company of Dallas, a corporation, for a period of time extending to May 15, 1935, and to recover damages in the sum of $5,000. A general demurrer was sustained to appellant's petition and a final judgment of dismissal of the suit was entered when appellant declined to amend his petition. The facts alleged in the duly verified petition become, in effect, a statement of the facts in this case. The facts so alleged are:

On August 1, 1928, appellee with two associates organized a corporation named the Electrified Water Company of Dallas, with a capital stock of $14,000; such stock being

owned equally by the three organizers, who were named as directors. The city of Dallas was named in the charter, as the place of business. The purpose of the corporation was to produce and sell mechanically purified water for drinking purposes.

Appellee was made vice president and general manager of the corporation, and it at once began the production and sale of mechanically purified water, confining its territory to the city of Dallas and its suburbs. Appellee is especially skilled and experienced in the purifying of drinking water by mechanical means. From the time of its entry in business until May 15, 1930, appellant was its manager, and through his efforts there was built up and maintained a growing number of customers, and there was established, largely through appellee's exertions, a valuable good will among customers and prospective customers in the city of Dallas and its suburbs. That as manager of the corporation appellee was in possession of and knew the names and addresses of its customers and prospective customers, and by communication with such customers, as well as by personal contact with them, he became identified in their minds with the business of selling and distributing mechanically purified water within the above-named territory. That a list of the customers and prospective customers of the business was kept under his supervision and control. That under the management, control, and work of appellee the value of the corporation's stock became materially enhanced, and that this was largely the result of the skill, experience, and special fitness of appellee as the manager of such business.

On May 15, 1930, appellant and appellee entered into a written contract, under the terms of which appellee sold and transferred his shares of stock in the corporation to appellant for the sum of $6,000, partly paid in cash, partly paid by the assumption of described indebtedness owed by appellee, and the remainder to be paid in future installments. It is alleged that at the time of the execution of this contract both appellant and appellee knew that the business of the corporation had been confined to the territorial limits of the city of Dallas and its suburbs, and that at such time appellant and appellee both knew that the value of the stock of the corporation would be materially affected if appellee should engage in a competing business.

The following paragraphs of the written contract are deemed material:

"I (appellee) will remain on as manager if you (appellant) so desire, as long as my services are satisfactory, and in the event that you, at any time, want to get a new manager for my place, I will stay on for a period of not more than two months in a supervising capacity at no pay and lend my best efforts to the proper instruction of the new manager and the proper carrying on of the business.

"I also agree not to engage in a competitive business or in any way become connected with a competitive business for a period of five (5) years.

"As long as I remain manager of this company I will give it all of my time and will not engage in any other line of work that requires any of my time. My salary under this arrangement, and as long as I am employed by you, is to be $200 per month plus a ten per cent (10%) bonus of the net profits of the company after depreciation."

Appellant alleged that the paragraph of the contract binding appellee "not to engage in a competitive business, or in any way become connected with a competitive business, for a period of five years" was intended by the parties only to apply to the territory of the city of Dallas and its suburbs, the territory in which the corporation was then transacting the business of selling mechanically purified drinking water; that appellant has fully performed all of the conditions imposed upon him by the contract, and would not have entered into the contract to purchase appellee's stock in the corporation if appellee had not promised, agreed, and contracted not to engage in a competitive business, or become connected with a competitive business, in competition with the business of the corporation; that appellant paid a valuable consideration for the execution by appellee of the restrictive clause in the contract, in that, the value of appellee's stock at the time of the purchase would have been much less than the sum of $6,000 paid by appellant, but for such restrictive covenant.

On September 15, 1931, appellee leased from the owners the plant of the Dallas Distilled Water Company of Dallas, and became the manager of such company, as well as of the right to share in its profits, and is continuing in such business; that the only difference between the product of the Electrified Water Company and that of the Distilled Water Company is purely technical, being based upon a difference in the mechanical process to which the water is subjected for purification; that the product of both companies is mechanically purified drinking water, and the Distilled Water Company is in direct competition with appellant's company for the sale of drinking water to the Dallas public; that appellee has induced customers of appellant corporation to purchase their drinking water from the Distilled Water Company instead of from appellant's company; that, by reason of appellee's breach of the restrictive clause in his contract of sale and his management of the Distilled Water Company, the sale of electrified water has materially diminished, the value of the stock purchased

from appellee has materially decreased, and appellant has been damaged in the sum of $5,000.

It is alleged that appellee is insolvent and has no property subject to execution; that by reason of the premises appellant has no adequate legal remedy; and he prays both for a temporary and a permanent writ of injunction, restraining appellee for a breach of the restrictive covenant.

The question for decision is, Do these facts show, as a matter of law, that appellant is not entitled to the equitable relief of an injunction restraining appellee from continuing his connection with the Dallas Distilled Water Company, or to form any business connection with any similar business, for the period named in his sales contract with appellant?

This is not a case in which the owner of a business sells the entire business and its good will to another, for the property right in the good will of the Electrified Water Company was in the corporation and not in appellant, a minority stockholder. Neither is it a case in which an employee, the duties of whose employment brings him in personal contact with the individual patrons of his employer in a limited territory, is enabled thereby to make the good will of the business of his employer in such territory, in a large degree, personal to himself. It is a case, however, in which the purchaser of stock attempts, by a restrictive covenant in the contract of sale, to restrict the seller from entering into another business, competing with the business of the corporation that issued the stock purchased, and therefore involving the same legal principles as in the other cases. There is shown no employment contract which restricted appellee, while employed as manager of the business of the Electrified Water Company, from connecting himself with the business of a competitor when such employment should cease.

These alleged facts show that, before the purchase of appellee's stock, there existed in the corporation a valuable property right which is usually described as the good will of its business, which could reasonably be depended upon to hold the then patrons of the business, and which would reasonably tend to draw other patrons. After appellant purchased the stock, there was no change in the property right of the corporation in such good will. These facts further show that this good will, built up largely through the personal skill and efforts of appellee, was associated by the patrons in a more personal way to appellee than to the corporation. It necessarily follows that the value of such good will could be decreased if appellee should in the future form a connection with another business producing for the market the same or similar product.

While ownership of the property right in the good will of the business of a corporation is in such corporation, still each stockholder necessarily has a direct interest therein, in that the value of his stock has a direct and close relation to the extent of the good will that has been built up for the business of the corporation. Anything that would tend to injure or destroy the value of such good will likewise would tend to lessen the value of stock in such corporation. So, while appellant did not and could not purchase from appellee and thereby become the owner of the good will of the corporation, or any proportionate part thereof, still on the purchase of such stock he did become personally interested in protecting the value of such good will. In consideration of the incidental interest that a stockholder has in the good will of the business of a corporation, the courts generally have held (California being an exception) that the purchaser of stock from one whose connection with the corporation has been such that his individual work or skill measurably added to the value of the good will of such corporation, can require from the selling stockholder a reasonable restriction in reference to such stockholder's right to enter the same or similar business in a territory limited to that over which the activities of the selling stockholder operated, and for a limited period of time. Annotations to Norfolk Motor Exchange v. Grubb (Va.) 63 A. L. R. 316–325.

Under the above authorities, the more liberal rule as to the purchaser, which applies to the selling of a business and its good will in respect to the contract of the seller not to re-enter such business, does not apply, but the more restricted rule, in respect to employment contracts, restricting employees for a limited time and in a designated territory from accepting employment in a competing business, is generally applied, and we shall apply such rule to the instant case.

The editor of the notes in an annotation given in 9 A. L. R. 1468, announces the general rule of law in reference to such employment contracts in the following language: "It is clear that if the nature of the employment is such as will bring the employee in personal contact with the patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him, by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons or customers of his former employer, and thereby gain an unfair advantage, equity will interfere in behalf of the employer and restrain the breach of a negative covenant not to engage in such competing business, either for himself or for another, providing the covenant does not offend against the rule that as

to the time during which the restraint is imposed, or as to the territory it embraces, it shall be no greater than is reasonably necessary to secure the protection of the business or good will of the employer."

The rule above announced has become the settled rule of law in this state, in reference to such employment contracts, and, as the same reason exists for the protection of the purchaser of stock, under the same conditions, it follows that the rule of law in respect thereto, though no stock-purchasing cases appear to have been before our courts, is likewise settled in this state. City Ice Delivery v. Evans (Tex. Civ. App.) 275 S. W. 87; Bettinger v. North Fort Worth Ice Co. (Tex. Civ. App.) 278 S. W. 466, 469; May v. Lee (Tex. Civ. App.) 28 S.W.(2d) 202; Oak Cliff Ice Delivery Co. v. Peterson (Tex. Civ. App.) 300 S. W. 107, 111; 10 Tex. Jur. p. 227, § 133; Byers v. Trans-Pecos Abstract Co. et al. (Tex. Civ. App.) 18 S.W.(2d) 1096.

As shown by the above decisions, such rule holds as valid a restrictive clause in a contract of employment limiting the freedom of employment, or of entering a similar business to that of his employer, provided such restriction is reasonably necessary to protect the employer in the good will of the business which such employee was charged with building up in a defined territory, and provided the restriction in the contract is limited as to the time it is enforceable and as to the territory to which it applies.

In construing the restrictive clause in the instant case, it must be borne in mind that contracts restricting the liberty of employment are not viewed by the courts with favor. The rule in this respect is announced by this court, through Associate Justice Vaughan, in Oak Cliff Ice Delivery Co. v. Peterson, supra, as follows: "In the enforcement of such covenants, courts will diligently and with a jealous care inquire into the necessity for and the reasonableness of same to the end that those who through necessity must labor to earn a livelihood will not be placed at the mercy of those who do not so have to toil, for otherwise a condition of industrial servitude might be developed."

To the same effect is the announcement of the Fort Worth Court of Civil Appeals, through the late Associate Justice Buck, in Bettinger v. Ice Co., supra: "We agree with the proposition that one seeking to enforce the terms of a written contract between an employer and an employee, and providing that the employee shall not work for a competing company or operate a competing business, or sell goods in a designated territory, is one that the law looks upon with the greatest scrutiny, and the burden of showing the reasonableness of the contract is upon him who seeks to enforce it."

These judicial pronouncements forbid the placing of a construction on the terms of such restrictive covenants that is not clearly a legitimate inference from the language used in such covenants. Two questions must be answered to determine the validity of such a covenant: (1) Is the restraint placed upon the employee, after the employment had ceased, necessary for the protection of the business or good will of the employer? (2) Does it impose upon the employee any greater restraint than is reasonably necessary to procure protection to the business of the employer or the good will thereof? Bettinger v. Ice Co., supra. Keeping in mind the rule in this state, that such a restrictive covenant must be limited both as to time and territory, and also keeping in mind the right of every person to enjoy the liberty of employment, let us examine the restrictive covenant in the instant case and determine whether it complies with these requirements, or is invalid as a matter of law, because of a failure to comply with one or both of them. The covenant is: "I also agree not to engage in a competitive business or in any way become connected with a competitive business for a period of five years."

The covenant is limited to a period of five years. It cannot be said that such period of time, as a matter of law, is unreasonable, and hence we will not further discuss the covenant in this respect. Does it limit the territory over which it is to be effective to such territory only as was embraced in appellee's personal activities in building up the business of the Electrified Water Company? The covenant does not specifically define any territory in which appellee is denied the liberty of employment, and, if there is such a limitation, it must be that which the language of the covenant implies and necessarily defines. The only language from which such an implication can be read into the contract is that of the term "competitive business." Appellant contends that this term only refers to a business competing with the Electrified Water Company in the city of Dallas and its suburbs. Appellee contends that, as the Electrified Water Company may do business anywhere in Texas, the term applies to any territory within this state within which the Electrified Water Company might elect, within the time limit of the contract, to operate its business.

We are not cited to any legal definition of the term "competitive business" that appears to be applicable to its meaning when used in this character of a covenant. If appellant's restricted definition be adopted, then the covenant would not be invalid as a matter of law. If appellee's definition of the term be adopted, then, in our opinion, the covenant restricts appellee from entering such a business in a territory much larger than is reasonably necessary to make appellant secure in the property he has purchased, and hence the covenant

is invalid, as a matter of law. If the contract had read, "I agree not to engage in a competitive business in the same territory in which the Electrified Water Company is now doing business," then such covenant would not on its face be invalid. As we view this case, however, under the rule of construction we must apply, we cannot read such a restriction into the contract, nor any other restriction that does not clearly appear on the face of the restrictive covenant.

To our minds, the term "competitive business" is merely descriptive, and carries the same meaning as the term "similar business." We are of the opinion that the restrictive covenant in the contract forbids appellee from entering the same character of business either as employee, owner, or lessee in a territory in which the Electrified Water Company has elected or may elect to sell its product, regardless of whether the activities of appellee had developed such territory for such company during his connection therewith, and that such restrictive covenant is void on its face.

The trial court therefore did not err in sustaining the general demurrer, and the judgment is affirmed.

Affirmed.