No. 9978. JULY 11, 1934.

L. F. *Watson* and C. C. *Crockett*, for plaintiff in error.

# NATIONAL LINEN SERVICE CORPORATION *v.* CLOWER *et al.*

No. 9992.   July 11, 1934.

142

*Herbert J. Haas, Bertram S. Boley, George B. Tidwell,* and *Joseph F. Haas,* for plaintiff.

*Winfield P. Jones, Colquitt, Parker, Troutman & Arkwright,* and *Harllee Branch Jr.,* for defendants.

BELL, J. ■ Clower agreed with Atlanta Linen Supply Company that for the period of one year next following the termination of his employment with that company he would not, for himself or in behalf of any other person, engage in the same kind of business within the limits of Fulton County, and stipulated that the provisions of the contract "shall extend to the successors and assigns" of the employing corporation. It is the restrictive covenant which the National Linen Service Corporation as an alleged assignee is seeking to enforce. Under previous decisions by this court such a covenant is assignable; and the more especially is this true of the contract here under consideration, in view of the agreement by the employee that its provisions should extend to "successors and assigns." In the instant case we are not concerned with any effort to assign the employee's agreement to work for the employing corporation. It is only the restrictive covenant whereby the employee agreed not to engage in the same line of business, and not to work

for any other person engaged in such business for the period of one year within a stipulated territory, that calls for any adjudication in the present case. This agreement, if valid, was assignable. *Swanson* v. *Kirby,* 98 *Ga.* 586 (2) (26 S. E. 71) ; *Legg* v. *Hood,* 154 *Ga.* 28 (3) (113 S. E. 642).

■ On September 1, 1928, Atlanta Linen Supply Company made a contract with National Linen Service Corporation, whereby it undertook to convey all of its personal property including "choses in action of every description," its "good will," and "every other form of asset owned or controlled" by it in connection with the business which it conducted in the name of Atlanta Linen Supply Company. The contract between it and Clower was delivered to National Linen Service Corporation upon the closing of this transaction. The petition shows that Clower was still working for Atlanta Linen Supply Company under his contract with that company, and that he continued in the service of the plaintiff "under the terms of said contract" until June 6, 1933. He thus recognized the plaintiff as his employer, and adopted the purported assignment to it by the Atlanta Linen Supply Company. For nearly five years he received from the plaintiff the compensation and benefits which were to flow from the Atlanta Linen Supply Company, its "successors and assigns," during all of which time the plaintiff was in possession of the contract and was dealing with the employee in place of Atlanta Linen Supply Company. We need not consider technical definitions of the phrase "chose in action" or of other terms employed in the purported assignment. The most important rule to be applied in the construction of a contract is to ascertain the intention of the parties; and to this end the language used must be examined in the light of all the attendant circumstances. A word may have one meaning in a dictionary, even a law dictionary, and an entirely different meaning in a contract. Whether or not the restrictive covenant as made by Clower should be called a "chose in action" or should be considered as a part of "the assets" or of the "good will" of the Atlanta Linen Supply Company, it is clear that this company intended to assign and convey to National Linen Service Corporation every right connected with the business which it sold to the corporation last named, and as a part of the transaction it made a physical delivery of the contract under consideration. In view of these circumstances, and of the reciprocal

conduct of the employee and National Linen Service Corporation, as hereinbefore stated, by which the validity of the assignment was fully recognized, we do not hesitate to hold that the service corporation became at least an equitable assignee of the restrictive covenant, and therefore was entitled to enforce the covenant in equity, in the absence of other obstacle. *Jones* v. *Glover,* 93 *Ga.* 484 (21 S. E. 50); *Southern Mutual Life Insurance Association* v. *Durdin,* 132 *Ga.* 495 (64 S. E. 261, 131 Am. St. R. 210); *United Engineers &c. Inc.* v. *Fiat Metal Mfg. Co.,* 175 *Ga.* 509 (165 S. E. 609); Public Opinion Printing Co. *v.* Ransom, 34 S. D. 381 (148 N. W. 838, Ann. Cas. 1917A, 1010).

■ The restrictive covenant as made by the defendant Clower did not attempt an unreasonable restraint of trade, and was not invalid as relating to his right to pursue an occupation. In *Kinney* v. *Scarbrough Co.,* 138 *Ga.* 77 (74 S. E. 772, 40 L. R. A. (N. S.) 473), it was said: "The jurisdiction of equity to enjoin a person from doing business or performing service of a certain character has generally been invoked under one of four heads: (1) Where there has been a sale of a business and good will, with an ancillary agreement by the seller not to engage in the business in a certain territory. (2) Contracts by which an employee agrees to give his entire service to the employer, which sometimes include an express negative covenant not to serve any other person within a fixed time and territory. In such cases, the negative covenant will not be enforced by injunction, unless the services are of a peculiar merit or character, and can not be performed by others. *Hammond* v. *Georgian Co.,* 133 *Ga.* 1 (65 S. E. 124). (3) Contracts binding one to desist from the practice of a learned profession. (4) A contract by an employee, ancillary to his contract of employment, not to engage in a competing business for himself or as an employee of another." In the present case, as in that case, the suit for injunction is based upon the fourth principle as stated in that decision. In the *Kinney* case, this court held that the restrictive covenant was invalid, because it was not limited as to territory; but in *Shirk* v. *Loftis,* 148 *Ga.* 500 (97 S. E. 66), it was held that "An agreement in restraint of trade, ancillary to a contract of employment, supported by a valuable consideration, and limited as to both time and territory, and not otherwise unreasonable, is enforceable." In that case the restrictive agreement was to

continue for a period of four years after the termination of the contract of employment, and as to territory was limited to the City of Atlanta. In the opinion in the *Shirk* case this court through Mr. Justice George said: "While a restrictive agreement by one who enters another's employment is not ancillary to the sale of a business, or the good will thereof, there can be no doubt that an agreement that during the term of the service, and for a reasonable period thereafter, the employee shall not become interested in or engage in a rival business, is reasonable and valid, the contract being otherwise legal and not in general restraint of trade. This is the rule followed by a majority of the American courts, and is supported by reason. See 6 R. C. L. 805, and cases cited in note; *Kinney* v. *Scarbrough Co.,* [supra], where the restrictive agreement ancillary to the contract of employment was held illegal because the restraint was unlimited as to territory. With respect to contracts of the character here under consideration this court seems to be committed to the rule that the contract must be limited both as to time and territory, and not otherwise unreasonable. If limited as to both time and territory, the contract is illegal if it be unreasonable in other respects. And with respect to restrictive agreements ancillary to a contract of employment, the mere fact that the contract is unlimited as to either time or territory is sufficient to condemn it as unreasonable. In this view of the matter, the rule announced by this court is in harmony with the rule generally followed by the courts of other States." It was held that while the contract was in restraint of trade, it was limited as to both time and territory, and was not unreasonable. The decision in the *Shirk* case virtually controls the questions which are being considered in this division; and we do not deem it necessary to allude to outside authorities relating to contracts of this character by employees.

■ The defendant employee stated in his contract that he could not be compelled to respond in damages in an action at law. He was receiving $28 per week; and it does not appear that his financial condition has so changed that he would be able to pay damages, if recovered. But, regardless of this, the damages resulting to the plaintiff could not be reasonably ascertained; and under the decisions referred to in the preceding division, as well as others, the petition was not subject to general demurrer on the ground that

the plaintiff had an adequate remedy at law. Cf. *Holtman* v. *Knowles,* 141 *Ga.* 613 (2) (81 S. E. 852) ; *Busk* v. *Wolf,* 143 *Ga.* 18 (3) (84 S. E. 63).

■ This was not a suit to enjoin a breach of contract for personal services; and the principle that an injunction will not issue to restrain the breach of such a contract unless the services are of a peculiar merit or character is without application in this case. On the other hand, the suit was to restrain the defendant from violating his agreement not to engage in the same line of business either for himself or in behalf of or in conjunction with others after his employment with the plaintiff had been terminated. There is a broad distinction between a breach of contract to render personal services and a violation of a restrictive covenant ancillary to such contract by which the employee agrees not to engage in a competitive business either for himself or in behalf of another after the contract with his employer has been terminated. In the former case injunction will not issue to restrain the breach of the contract, unless the services required thereby are of peculiar merit or character; while in the latter case it is immaterial that the services which the employee has *contracted not to perform,* for himself or another, may not be of peculiar merit or character. This distinction should be readily apparent upon a careful examination of the decision in *Burney* v. *Ryle,* 91 *Ga.* 701 (17 S. E. 986), from which the Code section 5496 was taken. See also *Hammond* v. *Georgian Co.,* supra; 6 R. C. L. 805, § 206.

■ With reference to the Hotel Company the petition alleged that this company was aiding and abetting and inducing Clower to violate his agreement with the plaintiff. It was alleged that the Hotel Company was on notice of this agreement, and was aiding and abetting the defendant Clower by assisting him in concealing his identity with assumed trade-names, and was sharing in the profits which were being derived by Clower from his linen supply business. These averments are sufficient to state a case for injunction against the Hotel Company, provided the petition alleges a cause of action against Clower. In *Luke* v. *DuPree,* 158 *Ga.* 590 (124 S. E. 13), this court held that it was actionable maliciously or without justifiable cause to induce one to break his contract with another, to the damage of the latter. Personal ill will or animosity is not essential to the cause of action. Any unau-

thorized interference, or any interference without legal justification, may become actionable. It was further said in that case: "The breach of a contract is unlawful. It is unlawful for others, without lawful excuse, to induce the maker of a contract to break it, or to aid him in its breach; and for the maker and others to combine to break it is a conspiracy, which entitles the other party to the contract to his action against the conspirators for any damage which he may sustain." Here an action for damages would not have been adequate, and the remedy of injunction was available.

The petition stated a cause of action against each defendant, and it was error to sustain the general demurrer and the oral motion to dismiss. *Judgment reversed. All the Justices concur.*