## BLASER v. LINEN SERVICE CORPORATION OF TEXAS.

### No. 12924.

Court of Civil Appeals of Texas. Dallas.

Dec. 23, 1939.

Rehearing Denied Jan. 13, 1940.

Esir Tobolowsky and Sylvan Tobolowsky, both of Dallas, for appellant.

Scurry & Scurry, of Dallas, for appellee.

BOND, Chief Justice.

This is an appeal from an order granting a temporary injunction, restraining appellant from soliciting towel and linen supply customers of appellee, in violation of a restrictive covenant in a laundry contract.

The Linen Service Corporation of Texas filed suit in a District Court of Dallas County, alleging that on or about May 18, 1937, its predecessor, the Cannon Ball Supply Company of Dallas, entered into a written contract of employment with Frank Blaser whereby he was to call for and deliver laundered and unlaundered goods among its customers, and perform such other duties as might be requested of him, and to use all necessary diligence to make and keep trade customers for his employer, and to keep just and true accounts pertaining to the business of his employer, as he might be directed from time to time. It was further alleged that the employe agreed that he would not, at any time while he was in the employ of Cannon Ball Towel Supply Company, or any of its assigns; or within one year after leaving the service of such employer, either for himself or for any other person, persons, or corporations, call for and deliver laundered and unlaundered goods to any person who shall have been a customer of said employer, or in any way, directly or indirectly, solicit, divert or take away, or attempt to solicit, divert or take away any of said customers of the Cannon Ball Towel Supply Company, or its assigns.

Plaintiff further alleged that on or about April 1, 1939, it purchased the Cannon Ball Towel Supply Company's towel and linen supply business and good will of the concern in the City of Dallas, Texas, and any other town or territory within the

towel supply route entrusted to its employes and on which routes customers of the Cannon Ball Company were being served by its employes; and that all towel and linen supplies, lists of customers, books of accounts, contracts (including the contract with defendant), and the good will of the company and its employes were duly transferred, delivered and assigned to the plaintiff. It was further alleged that the defendant worked for the Cannon Ball Towel Supply Company under such contract of employment, was given a list of customers to serve on behalf of said employer, and, after the sale and transfer of the contract to plaintiff, continued the work until about June 3, 1939, when he terminated the employment and thereafter breached the restrictive covenant of the contract; began soliciting towel and linen supply business among plaintiff's customers who had theretofore been served by him, and engaged in competitive business, in violation of the negative covenant of the contract, resulting in plaintiff's irreparable injury and damage.

The trial court, in limine, granted a temporary restraining order and, upon a show cause hearing, a temporary injunction. The appeal reaches this Court without a statement of facts; appellant's assignments are predicated upon demurrers to pleadings and conclusions from findings of the trial court. Insofar as pertinent for this opinion, we adopt the trial court's findings of fact, which are, in effect, as follows: On May 18, 1937, the defendant entered into a written contract of employment with the Cannon Ball Towel Supply Company of Dallas, which contract recites that the said concern has built up and established an extensive towel supply business; that its employes are taught and entrusted with its particular methods of carrying on its business in calling for and delivering laundered and unlaundered goods; that they are trained and instructed in the particular methods of such pursuits and are entrusted with lists of customers and methods of dealing with same on a towel supply route assigned to employes, which, in the present instance, was described as a certain list of customers set forth in a schedule attached to the contract. Under such contract, defendant agreed to call for and deliver such laundered and unlaundered goods, to use all diligence to make and keep trade for his employer, and to keep a just and true account with all customers of his employer.

Said contract further provided that during his employment and for one year thereafter, he would not call for or deliver laundered or unlaundered goods to any person or persons who, during the term of his employment, were customers of his employer, or in any way, directly or indirectly, solicit, divert, take away, or attempt to solicit, divert, or take away from his employer business or patronage of customers who were assigned to defendant for service. Said contract was to continue from year to year unless terminated as provided therein, and further provided "that the privileges and benefits of this contract shall extend to its successors and assigns". That, at the time of making said contract, the Cannon Ball Towel Supply Company furnished the defendant with a list of such customers to serve, changeable from time to time.

On April 1, 1939, the Cannon Ball Towel Supply Company sold its towel and linen supply business, with its good will and that of its employes, to plaintiff, which sale and transfer included the employment contract with defendant; and, thereafter, the defendant continued working under the terms of the contract, serving customers whom he had theretofore served for plaintiff's predecessor, and, in addition, certain other customers turned over to him by the plaintiff. On or about June 1, 1939, defendant voluntarily terminated his employment with plaintiff and thereafter began working for Olympia Towel Supply Company, serving plaintiff's customers with the Olympia Company's supplies, soliciting customers previously served by him under his employment by the Cannon Ball Towel Supply Company, and under his employment by the plaintiff.

This appeal presents two principal questions: (1) Whether a temporary injunction may issue to restrain a violation of a restrictive covenant of an employe not to engage in a competitive business for a certain time, and within prescribed territory expressly set forth in an employment contract; and (2) whether such an employment contract may be assigned under a provision contained in the contract, expressly providing that the contract "shall extend to the successors and assigns of the employer".

The validity of restrictive covenants in a contract, as here involved, has been upheld ·by the courts of this state in numerous cases and we will not burden this opin-

ion with citation of authorities. Suffice to show that the general rule is stated by this Court in Martin v. Hawley, Tex.Civ.App., 50 S.W.2d 1105, 1107, citing authorities, in which is stated: "It is clear that if the nature of the employment is such as will bring the employee in personal contact with the patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons ·or customers, enabling him, by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons or customers of his former employer, and thereby gain an unfair advantage, equity will interfere in behalf of the employer and restrain the breach of a negative covenant not to engage in such competing business, either for himself or for another, providing the covenant does not offend against the rule that as to the time during which the restraint is imposed, or as to the territory it embraces, it shall be no greater than is reasonably necessary· to secure the protection of the business or good will of the employer".

The contract here involved expressly recites, and the trial court so found, that the employer had built up an extensive towel and linen supply trade, that the employer entrusted to its ·employe the task of calling upon its customers, delivering and collecting linen supplies; and entrusted the employe with a list of its customers within the limits of the City of Dallas and elsewhere. It will be seen that defendant was in position to come in personal contact with plaintiff's customers, acquire valuable information as to their needs and requirements, and that, engaging in a competing business for himself or for another, the employe was in position to take advantage of such acquired. knowledge and acquaintance, thus divert plaintiff's business to himself or to another by whom he might be employed. The customers and good will of a laundry, acquired over a long period of time, by courteous contact of its employes, are valuable assets, and the reasonableness of restrictive covenants not to divert such assets from his employer within the prescribed territory, where the employe had been working, is apparent. Equity will interfere in behalf of the employer and restrain the employe from gaining unfair advantage either for himself or for another,

for a time reasonably necessary to protect the employer in his secured .business and good will. The contract here limits the negative covenant not to ·engage in competing business,' either for himself or for another, for the time of one year after the termination of the employe's service, and the territory in which his influence and personal contact has long been exerted among plaintiff's customers, which is neither unfair nor unreasonable, and, we.are of the opinion, violates no rule of law or equity, thus enforceable by the equitable powers of a court.

The pleadings and evidence show that the employment contract entered into between the defendant and the Cannon Ball Supply Company, and thereafter sold and transferred, together with the good will of the laundry company, to the plaintiff, provides that "the privileges and benefits of this contract shall extend to the successors and assigns of the Party of the First Part" (meaning the employer) ; and that the defendant continued in the employment of the plaintiff under said contract, and later voluntarily left such employment. We are of the opinion that the trial court did not err . in its conclusion that the privileges and benefits of the negative covenant, not to. engage in competing business, were assignable, enforceable by injunction. We are not concerned here with any effort to assign an employe's agreement to work for the employing company, or its assigns, against an employe's will. It is only the restrictive covenant whereby the employe expressly agreed that "the privileges and benefits" of the contract may be assigned, that calls for adjudication in this case. The agreement of defendant to be bound by any assignment of the contract gives rise to the power of plaintiff's predecessor to assign and clothes the assignee with all privileges and benefits of the employment agreement.

The Supreme Court of Georgia, in the case of National Linen Service Corporation v. Clower, 179 Ga. 136, 175 S.E. 460, 463 (where Clower, the employe, agreed with the company, as here, that for the period of one year next following the termination of his employment with that company, he would not, for himself, or on behalf of any other person, engage in the same kind of business within a defined limit, stipulating that the provisions of the contract " 'shall extend to the successors and assigns' of the employing corporation"), said: "It is the restrictive covenant which

the National Linen Service Corporation as an alleged assignee is seeking to enforce. Under previous decisions by this court such a covenant is assignable; and the more especially is this true of the contract here under consideration, in view of the agreement by the employee that its provisions should extend to 'successors and assigns.'"

So, in the instant case, under the express terms of the contract, plaintiff, by the assignment, acquired a valuable privilege and benefit; therefore, perforce of the agreement of the contracting parties, plaintiff is entitled to enforce its terms.

■ Appellant urges numerous assignments on the sufficiency of the pleadings, which we have carefully considered, many of which are amendable on final hearing; this being an appeal from an interlocutory order, such assignments present no reversible error; they are overruled.

Judgment of the court below is affirmed.

## On Motion for Rehearing.

On motion for rehearing, appellant concedes that the provisions of the alleged negative covenants in the contract were valid and enforceable by the original employer, Cannon Ball Towel Supply Company, thus admitting, in effect, that such covenants were reasonable. The controlling question in this appeal then seems to be whether or not the contract was assignable. The Cannon Ball Supply Company sold its laundry business, including the contract here involved, with all its existing privileges and benefits, to appellee; thus, we see no sound reason for holding that appellant was absolved, because of such sale, from complying with the covenants and agreements which the contract contained. It is evident that no additional burden or hazard was cast upon appellant by the assignment. He accepted employment under the new set-up, and his duties remained the same as they were before such assignment was made. The only part of the contract here involved is the provision that the employe was not to engage, for himself or any other person or corporation, directly or indirectly, in the laundry business, as therein directed and within the prescribed territory, for a specified time of one year after leaving his employer's service. There was no distinctive individual skill, no peculiar personal qualification involved in appellant's employment; indeed, the contract made by appellant himself with the Cannon Ball Company was assignable under its express terms.

Under the facts appearing, it is the opinion of this Court that the writ was properly issued; that the pleadings are good as against a general demurrer, and the proof showed a probable right, and a danger to that right, unless injunctive relief was awarded. Motion for rehearing overruled.