**SCOTSMAN–NORWOOD CO., INC.,**
Appellant,

v.

**George R. HINSLEY et al., Appellees.**

No. 16364.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 17, 1974.

Rehearing Denied Nov. 14, 1974.

**348**

Fulbright & Crooker, John D. Gilpin, Martin D. Bierne, Houston, for appellant.

Julius Glickman, Houston, for appellees.

PEDEN, Justice.

This is an appeal from an order temporarily enjoining five former employees of Scotsman-Norwood Co. for two years from directly or indirectly soliciting, diverting or taking away any of that company's customers and enjoining them for six months from directly or indirectly soliciting, diverting, or taking away or attempting to solicit, divert, or take away any prospect or person to whom a sales proposal was made within three months prior to termination of the five employees' employment with the company. A list of the customers and a list of the prospects covered by the injunction were attached to the order.

Scotsman-Norwood had sought a temporary injunction enjoining the appellees from calling upon and soliciting fire alarm, burglar alarm and security alarm accounts in Harris County and from engaging in the business enterprises prohibited by their contract of employment with the appellant. The only point of error presented is that the trial court abused its discretion by limiting the temporary injunction to the listed customers and prospects and by declining to enjoin the appellees from engaging in the alarm business.

Scotsman-Norwood had employed the appellees in its alarms division, Alarm Engineers. At the time of their employment each employee signed papers which included a contract of employment containing a covenant not to compete with appellant for a period of two years following termination of his employment. Appellee Hinsley was the sales manager; appellees Walter, Griffin and Garrett were salesmen and appellee Cooper was the operations manager.

Appellee Hinsley's contract contained this provision:

"In consideration of such employment on such basis, the Employee convenants and agrees that he will not accept or pursue any employment or business venture within the State of Texas directly or indirectly involving the sale, lease and/or service of ice making machinery, soft cream freezing equipment, carbonic and other drinks dispensing equipment or any other product classification sold or distributed by the Company at present or during any part of the tenure of Employment or for a period of two (2) years after termination of this Employment with the Company, irrespective of the reason for the termination of his employment with the Company."

The other appellees' contracts provided:

"In consideration of such employment on such basis, the Employee covenants and agrees that he will not accept or pursue any employment or business venture within the State of Texas directly or indirectly involving the sale, lease, and/or service of security equipment of the Multra-Guard type with sound receiving and listening capabilities as distributed by the company at present or during any part of the tenure of Employment or for a period of two (2) years after termination of his employment with the Company."

Appellees terminated their employment with appellant on February 8, 1974. They immediately began the operation of Sonitrol Security Systems of Houston, Inc., whose articles of incorporation had been filed with the Secretary of State's office one day earlier. Appellee Hinsley was one of the incorporators. Sonitrol had been selling, installing and operating Sonitrol Security Alarm Systems for about a week when the hearing in this case was held.

The general rule regarding the enforceability of a covenant not to compete is stated in Weatherford Oil Tool Company v. Campbell, 161 Tex. 310, 340 S.W.2d 950, 951 (1960):

"An agreement on the part of an employee not to compete with his employer after termination of the employment is in restraint of trade and will not be enforced in accordance with its terms unless the same are reasonable. Where the public interest is not directly involved, the test usually stated for determining the validity of the covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer."

■ A trial court judgment either granting or denying a temporary injunction will not be reversed unless the appellate courts are convinced that it represents a clear abuse of discretion. Sun Oil Co. v. Whitaker, 424 S.W.2d 216 (Tex.1968).

Scotsman-Norwood argues that the trial court's order granting only partial relief denies it the protection of its business and goodwill because the appellees were appellant's only contacts with the public and because the appellees had gained confidential information and training from Scotsman-Norwood.

The evidence is clear that its customers' contacts with Scotsman-Norwood were through its sales personnel, of which appellees comprised a major part. In support of its position that the injunction should not be limited to its customers and prospects Scotsman-Norwood cites Blaser v. Linen Service Corporation of Texas, 135 S.W.2d 509 (Tex.Civ.App.1939, writ dism'd jud. corr.). The pertinent language of that case is:

"It is clear that if the nature of the employment is such as will bring the employee in personal contact with the patrons or customers of the employer, or enable him to acquire valuable information as to the nature and character of the business and the names and requirements of the patrons or customers, enabling him, by engaging in a competing business in his own behalf, or for another, to take advantage of such knowledge of or acquaintance with the patrons or customers of his former employer, and thereby gain an unfair advantage, equity will interfere in behalf of the employer and restrain the breach of a negative covenant not to engage in such competing business, either for himself or for another, providing the covenant does not offend against the rule that as to the time during which the restraint is imposed, or as to the territory it embraces, it shall be no greater than is reasonably necessary to secure the protection of the business and good will of the employer." Citing Martin v. Hawley, 50 S.W.2d 1105, 1107 (Tex.Civ.App.1932, no writ).

■ The relief granted in the present case is similar to that granted in the Blaser case, where the employees were restrained from dealing with their former employer's present customers. That appellees were the prime contact with appellant's customers lends them little, if any, advantage in soliciting the business of potential customers not recently contacted. Nor did the trial court abuse its discretion by declining to restrain the appellees from competing with appellant for the business of previously unsolicited customers although appellees were formerly appellant's contact with the public.

■ Appellant contends that it was hurt by appellees' overbidding on contract proposals prior to their departure from Scotsman-Norwood, but the trial court was entitled to conclude from the evidence that no overbidding took place. We also hold that by enjoining any solicitation by appellees of any person or company to which appellant had submitted a bid within the three months prior to February 8, 1974, the trial court probably prevented any detriment caused appellant's business and any advantage which would have been gained by appellees if they had overstated bids.

■ Appellant also contends that the Multra-Guard Alarm System, which comprises most of its burglar alarm sales, is a unique system, that during the appellees' association with appellant they received confidential knowledge and training in the workings of the system and that they took from appellant certain confidential information and supplies when they left their employment with appellant.

The Multra-Guard System has sound receiving and listening capabilities. There was testimony that several other burglar alarm systems were equipped with such capabilities. The evidence was conflicting as to whether or not any of these other systems were equipped with vox circuits, or similar equipment, having instantaneous receiving capabilities. The appellees indicated that such systems were available in Houston prior to February 8, 1974, while Mr. Norwood of Scotsman-Norwood said that to his knowledge they were not. The evidence as to similarities and differences between the Multra-Guard System and Sonitrol System was not entirely clear, but it was agreed that their receiving and listening capacities are similar in that both provide for instantaneous opening of circuits by certain sound frequencies. Mr. Norwood testified that they are similar; that other comparable systems might be available, but that Sonitrol and Multra-Guard were the only two with national merchandising programs.

In Arrow Chemical Corporation v. Anderson, 386 S.W.2d 309 (Tex.Civ.App.1965, writ ref. n.r.e.), the court found that the trial court did not abuse its discretion in denying a temporary injunction where the evidence supported the trial court's implied finding that the formula which the former employer sought to protect was not a genuine trade secret. The court cited the holding in Wissman v. Boucher, 150 Tex. 326, 240 S.W.2d 278, 280 (1951), that "[t]he subject matter of a trade secret must be secret. Matters of general knowledge in an industry cannot be appropriated by one as his secret."

It was clear from the evidence that no one company had a monopoly on the knowledge of how to manufacture and operate an alarm system similar to Multra-Guard System. The evidence is conflicting as to the uniqueness of a Multra-Guard System in Houston, and "We are not to substitute our judgment for that of the trial court in a case of this kind." Arrow Chemical Corporation v. Anderson, supra, 386 S.W.2d at 313.

The appellees testified that they were dissatisfied with their relationship with Scotsman-Norwood and decided to attempt a venture of their own. Admittedly this venture was prohibited by the restrictive covenant signed by each of the appellees. The trial court found that an injunction imposed as to present customers and recent

prospects was sufficient to reasonably protect Scotsman-Norwood's business. The trial court was entitled to believe from the evidence that the appellees neither received any special training nor removed any forms, lists or files that were confidential.

We cannot say that the trial court abused its discretion by impliedly finding that the imposition of any greater restraint on the former employees by injunction was not reasonably necessary to protect the business and goodwill of the employer during the pendency of this suit.

We note that the trial court's order does not provide that it remains in effect until final hearing or until further orders of the court, but it is clear that the hearing was on the appellant's application for a temporary injunction, so the order is limited to that extent.

We affirm the order of the trial court.